**UNITED STATES of America**

v.

**RADIO CORPORATION OF AMERICA and National Broadcasting Company, Inc.**

**Civ. A. No. 21743.**

United States District Court
E. D. Pennsylvania.
Jan. 10, 1958.

See also 21 F.R.D. 103.

**334**

Bernard M. Hollander, Charles L. Whittinghill, Raymond M. Carlson, Dept. of Justice, Washington, D. C., for plaintiff.

Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendants.

KIRKPATRICK, Chief Judge.

On January 22, 1956, National Broadcasting Company (NBC) exchanged its television and radio stations in Cleveland for those of Westinghouse Broadcasting Company (WBC) in Philadelphia. The transaction had been approved by the Federal Communications Commission (FCC) on December 21, 1955, and licenses duly granted. On December 4, 1956, the Government filed the complaint in this case praying that the Court adjudge the exchange agreement to be in violation of Section 1 of the Sherman Act, 15 U.S.C.A. § 1 and revoke NBC's license to operate the Philadelphia stations and divest it of its title thereto. The plaintiff has moved under Fed.Rules Civ.Proc. Rule 12(d), 28 U.S.C. for a preliminary determination of the sufficiency of certain affirmative defenses set forth in the answer. Those defenses, in substance, are (1) that the appeal provided by the statute is the exclusive means by which an order of the Commission may be reviewed by the courts and that, no appeal having been taken, the Court lacks jurisdiction of this suit, (2) that the Commission has determined the issues raised by this complaint, that that determination has become final and is a bar to the present action, under principles akin to res judicata and (3) that the plaintiff has forfeited its right to claim equitable relief by reason of the general equitable principles of laches and estoppel.

All facts relevant to the motion now before the Court have been stipulated.

**(1)**

Section 402 of the Communications Act (47 U.S.C.A. § 402) provides for a judicial review of orders of the FCC by an appeal to the Court of Appeals of the District of Columbia. In Black River Valley Broadcasts v. McNinch, 69 App.D.C. 311, 101 F.2d 235, 238, the Court of Appeals, affirming an order dismissing the complaint in an action involving the Communications Act, brought by a private party, said "It is well settled that the exclusive remedy provided by the statute to test the Commission's action is vested in this court by appeal, from which it follows that other courts do not grant equitable relief in such cases." The case did not involve the antitrust laws but the later case of Far East Conf. v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576, did. That was an action by the Government to enjoin a discriminatory system of shipping rates established by ocean carriers, members of the Conference. The regulatory statute involved was the Shipping Act, 46 U.S.C.A. § 801 et seq. and the administrative body, the Maritime Board, but I cannot see any reason to distinguish the basic considerations involved in that case and the present one. The Supreme Court held that the District Court could not proceed until the subject matter of the complaint had been passed upon by the Maritime Board, and dismissed the complaint, pointing out that if the Board's order should prove favorable to the United States it could be enforced by the District Court in a

similar suit initiated later. Actually, the Far East decision, supra, presents a stronger case in favor of the Court's jurisdiction because there had been no submission of the questions involved to the Maritime Board and the Government was not, as it is in this case, confronted by an adverse ruling of the administrative body having jurisdiction, made after full consideration of the same evidence upon which it relied to support its action in the court. The same result has been reached in a number of other cases in which the reasons advanced by the courts were variously want of jurisdiction (Black River Valley Broadcasts v. Mc-Ninch, supra), the doctrines of primary jurisdiction (United States v. Western Pacific R. Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126), administrative finality or its equivalent, the exhaustion of administrative remedies (Interstate Nat. Gas Co. v. Southern California Gas Co., 9 Cir., 209 F.2d 380), all, however, involving the basic policy of supporting the rulings of administrative agencies against court review otherwise than as provided in the statutes creating the agencies, and of protecting the parties involved against "this type of double jeopardy * * * for the same allegations before two different tribunals." Conference Report on Amendments to the Communications Act. This policy is so deeply imbedded in the law and the reasons on which it is based are so compelling that it goes far toward resolving any doubt about the appeal being the exclusive remedy in cases like this.

■ I have considered the plaintiff's argument based on the legislative history of the amendment to Section 311 of the Communications Act, 47 U.S.C.A. § 311. The fact is that Section 311 of the original Act of 1934 contained a sentence providing that the granting of a license should not estop the United States

from proceeding against licensees for violations of the antitrust laws and that Congress in reenacting the Section in 1952 struck out that sentence. The plaintiff argues that the Act is to be read exactly as though the sentence in question had not been stricken out, basing its position on a statement in the Conference Report that the elimination would be of no significance and that the power of the United States to proceed would not be curtailed or affected. Assuming that a provision, removed from a statute by the Congress, can be continued in full force and effect because a congressional committee thought it was unnecessary surplusage—a somewhat doubtful proposition—it would seem that what was intended to be conveyed to Congress by the Report was that a grant of a license would not free a licensee from accountability in the courts for subsequent violations of the antitrust laws arising from the misuse of the powers acquired by the license. Unless that was what the Committee meant, its subsequent statement, quoted above, would be wholly inconsistent with the first part of its report. In the light of the statement that the Committee "believes there is merit in the contention that citizens should not be subject to trial for the same allegations before two different tribunals", it would seem that the reason for striking out the sentence in question was that it was feared that it might permit the Government to proceed in cases like the present one to penalize parties for entering into transactions, cleared by the FCC after a consideration by it of all the evidence.[1]

(2)

■ But even if this Court had jurisdiction of this cause, I do not think it could properly exercise it. The FCC requested and obtained from the parties all of the information which the Govern-

---

1. I doubt that the foregoing discussion is of very great value. It seems that it is going rather far afield for a court to apply itself to interpreting a somewhat ambiguous Committee Report rather than reading the statute as written. However, in view of the growing import-ance which courts appear to be giving to such matters in interpreting statutes, it seemed proper to consider the argument of the plaintiff and of the FCC, based on their views of the legislative history.

**336**

ment now has and on which it bases this suit. The FCC was under a duty to pass upon the issues presented by this evidence. The parties have stipulated that the FCC decided all issues relating to the exchange which it could lawfully decide. There is no doubt that, in finding that the exchange was in the public interest, it necessarily decided (whether it now agrees that it did or not) that the exchange did not involve a violation of a law which declares and implements a basic economic policy of the United States. Later statements by its chairman, as well as the statements contained in an opinion of one of the commissioners in granting the license, which may be construed to mean that the FCC did not consider that the Government would be precluded from prosecuting, by its decision, cannot affect the outcome.

In no sense does such a decision operate to oust the courts of jurisdiction nor is any remedy taken away. The Government had a complete remedy by appeal if it deemed the action of the Commission improper. The Antitrust Division was at all times fully apprised of the proceedings and of the facts upon which the Commission acted. The Government did not appeal, and waited for approximately one year before it began the present suit which admittedly is based on nothing which the Commission did not have before it. Under these circumstances, the orderly administration of law requires that this Court dismiss the action, whatever might be proper in other cases where facts are not known to the Commission or where the parties engage in unlawful conduct after the granting of the license.

### (3)

■ But assuming that the Government's contentions up to this point are all correct, there remains a compelling reason why this suit should not be proceeded with. In appealing to the Court's discretion to exercise its equitable jurisdiction, the Government stands in no different position from that of a private individual. It has never been held that the Government is entitled automatically to equitable relief upon a showing that a defendant has committed a violation of the law. In Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 591, 88 L.Ed. 754, a violation of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 925 (a) was established. The Supreme Court, however, reversed the Court of Appeals, 78 U.S.App.D.C. 98, 137 F.2d 689, holding "A grant of *jurisdiction* to issue compliance orders hardly suggests an absolute duty to do so under any and all circumstances * * * We are dealing here with the requirements of equity practice with a background of several hundred years of history. Only the other day we stated that 'An appeal to the equity jurisdiction conferred on federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity.'" and again in Appalachian Coals, Inc., v. United States, 288 U.S. 344, 377, 53 S.Ct. 471, 480, 77 L.Ed. 825, "The fact that the suit is brought under the Sherman Act does not change the principles which govern the granting of equitable relief."

In the present case the parties presented the Commission with full information, received permission for the transfer in a proceeding which covered six months, and consummated the transaction a month thereafter. It may be noted that the Commission's approval was not granted until over four months after the Antitrust Division had been officially notified of the proposed transaction and alerted for possible antitrust features. The consummation of the transaction occurred after the time for appeal from the Commission's order had expired. It involved not only an exchange of millions of dollars worth of property but $3,000,000 in cash, together with extensive changes in personnel, organization and operating procedures. The present suit was not filed until December 1956, and it presented no new facts and nothing which the Government had not known for over a year, and no satisfactory explanation for the delay is forthcoming.

In accordance with Rule 12(d) I make the determination that the Third, Fourth and Fifth defenses are valid and constitute a bar to the prosecution of this suit.

An appropriate order may be submitted.