The **FIRESTONE TIRE & RUBBER COMPANY, Inc.** and Firestone Tire & Rubber Company of the Philippines, Plaintiffs,

v.

**AMERICAN PRESIDENT LINES, LTD.,** et al., Defendants.

No. 66 Civ. 793.

United States District Court
S. D. New York.

Aug. 30, 1966.

Donovan, Leisure, Newton & Irvine, New York City, for plaintiffs, A. Vernon Carnahan, Peter J. Gartland, John H. Wilkinson, New York City, of counsel.

Elkan Turk, Jr., New York City, for moving defendants, Burlingham, Underwood, Barron, Wright & White, New York City, Henry F. Minnerop, New York City, of counsel.

WYATT, District Judge.

This is a motion by all defendants (except one) for a stay of proceedings herein (a) until final determination of a proceeding which (it is claimed) plaintiffs ought to institute before the Federal Maritime Commission (the "Commission"), or (b) until final determination of proceedings (No. 672) before the Commission which resulted in its order made July 28, 1965, now on review in the Court of Appeals for the Fifth Circuit.

The action here, commenced on March 18, 1966, is for treble damages under the Sherman and Clayton Acts (15 U.S.C. §§ 1 and following: 15 U.S.C. § 15).

Plaintiffs are shippers of commodities to the Far East from parts of the United States. Defendants are the members of the Far East Conference, an association of shipping companies which establishes rates under agreements subject to approval by the Commission; Far East is itself a defendant also.

The complaint alleges that from about 1953 defendants and Pacific Westbound Conference and its members conspired to restrain trade by eliminating competition in ocean carriage to the Far East. The members of Pacific Westbound are alleged to be common carriers serving the Far East from Pacific Coast ports of the United States. The members of Far East are alleged to have fixed rates for the carriage of goods to the Far East from Atlantic and Gulf ports of the United States. It is averred that carriers to the Far East from Atlantic and Gulf ports compete with carriers to the Far East from Pacific ports.

The complaint alleges that in carrying out the conspiracy and with respect to

rates to the Far East, defendants, among other things:

(a) agreed to make no changes in their rates as to certain commodities without the concurrence of Pacific Westbound;

(b) allocated certain commodities and the "rate fixing initiative" with respect thereto as between Far East and Pacific Westbound;

(c) agreed with Pacific Westbound that it (Pacific Westbound) would make no changes in rates for commodities as to which Far East had the "initiative" without the concurrence of Far East;

(d) agreed that Far East would make no changes in rates for commodities as to which Pacific Westbound had the "initiative" without the concurrence of Pacific Westbound;

and made other agreements with respect to allocation of territory as between Far East and Pacific Westbound, etc.

Plaintiffs aver that because of the conspiracy, they were forced to pay higher freight rates and so were damaged.

On March 29, 1966, plaintiffs served on defendant Far East written interrogatories under Fed.R.Civ.P. 33.

On April 7, 1966, defendants served notice of the present motion for a stay. Defendants have not served an answer.

On April 21, 1966, defendants (except one) in the action at bar commenced a suit in admiralty in this Court against The Firestone Tire & Rubber Company, Inc. (a plaintiff here; "Firestone"). (Named also as a respondent was one member of Far East which allegedly refused to join the suit as a libelant.) This suit covered the period August 1, 1962–August 31, 1964. The libel alleged that Firestone had a contract with the members of Far East, that Firestone had agreed to ship to Far East ports only on vessels of members of Far East Conference, that in violation of the contract Firestone (and its subsidiary, the other plaintiff in the action at bar) failed so to ship, and that on shipments to Far East ports Firestone paid to members of

the Far East Conference lower rates than should have been paid.

On May 2, 1966, libelants in the admiralty suit (defendants here) served on respondent The Firestone Tire & Rubber Company, Inc. (a plaintiff here) written interrogatories under Fed.R.Civ.P. 33.

Movants rely, in asking a stay of the action at bar, on the decision of the Supreme Court in Carnation Co. v. Pacific Westbound Conference, 383 U.S. 213, 86 S.Ct. 781, 15 L.Ed.2d 709 (February 28, 1966), opinion amended, 383 U.S. 932 (March 7, 1966), directing issuance of a stay of that action pending final determination of the Court review of the Commission's order in No. 872, above mentioned. It is necessary to consider the background for, and the meaning of, the cited Supreme Court decision.

Section 15 of the Shipping Act (46 U.S.C. § 814) requires that all agreements fixing ocean freight rates be filed with the Commission and that the Commission approve or disapprove such agreements. An exemption from the antitrust laws is granted by Section 15 to all agreements "lawful under [that] section".

On October 26, 1959, the Federal Maritime Board, predecessor to the Commission, began an investigation (authorized by Section 22 of the Shipping Act, 46 U.S.C. § 821) to determine, among other things, whether filed Agreement No. 8200 between Far East and Pacific Westbound was a "complete" agreement. The proceeding was numbered 872. Far East was a party to the proceeding.

On September 8, 1960 the Board by order granted leave to Carnation to intervene in No. 872.

On December 5, 1962 Carnation filed a treble damage antitrust action in the United States District Court for the Northern District of California against Pacific Westbound, Far East, and individual members. The claim was that there was an unlawful combination fixing rates to Far East ports (specifically the Philippines) under agreements which were not approved by the Com-

mission under Section 15. As later described by the Court of Appeals for the Ninth Circuit (336 F.2d 650 at 651):

"The burden of the complaint of Carnation is that a certain increased rate fixed and put into effect, relating to plaintiff's product and its rates for shipping over the routes traversed by the members of the Pacific Westbound Conference, was established between the members of both conferences, not pursuant to Agreement No. 57, nor pursuant to Agreement No. 8200, the approved agreements, but pursuant to another agreement which was not presented to or approved by the Commission. Accordingly, it is said the fixing of that rate was a per se violation of the Sherman Act. This forms the basis for Carnation's claim for treble damages."

The Commission was granted leave by the District Court to intervene. Defendants and the intervener moved to dismiss for lack of jurisdiction of the subject matter in that, among other things, the Shipping Act had superseded the antitrust laws and gave an exclusive remedy for any violation of such Shipping Act; reference was made to the proceedings (No. 872) before the Commission. The motion was granted in reliance on Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952).

On July 30, 1964, the Court of Appeals affirmed the dismissal of the action. Carnation Co. v. Pacific Westbound Conference, 336 F.2d 650 (9th Cir.).

On July 28, 1965, the Commission made a decision in the investigatory proceedings, No. 872. It found (among other things) that there were supplemental agreements between the two Conferences as to "rate-making initiative" and as to "concurrence procedures" (matter of which plaintiffs complain in the case at bar), that these supplemental agreements were not the carrying out of filed and approved Agreement No. 8200 and were not exempt from the filing and approval requirements of Section 15, that the supplemental agreements should have been filed with the Commission, and that action under such supplemental agreements was thus unlawful.

On February 28, 1966, the Supreme Court handed down its decision. It held that carrying out agreements as to rates which agreements had not been approved by the Commission was conduct subject to the antitrust laws. The Supreme Court adhered to the "primary jurisdiction" principle of Far East Conference v. United States, above cited, and concluded that when the conduct of defendants is "arguably lawful under the Shipping Act" courts should not award treble damages until after the Commission has made a decision. The Supreme Court found it error to *dismiss* the action because— unlike injunctive actions such as Far East Conference v. United States—"a treble damage action for past conduct cannot be easily reinstituted at a later time" since it is subject to statutes of limitations and likely to be barred; therefore, the Supreme Court directed a stay of the action.

The stay directed in *Carnation* is of little value as precedent in the case at bar; much less does it establish as "a matter of law" that in these circumstances a treble damage action "must be stayed" (reply memo for movants, page 3).

There is a significant difference between *Carnation* and the case at bar. At the time the stay was ordered in *Carnation,* plaintiff there had been for more than five years a party to the proceedings before the Commission. The conduct of defendants toward Carnation Co., which formed the subject of its treble damage action, was elaborately inquired into and studied in the Commission proceedings. There are in the Commission's decision a number of findings and conclusions and much discussion of the Carnation Co. claims (8 F.M.C. 560, 562–64, 566, 567, 570, 571–72, 573, 575, 586, 594). Thus Carnation Co. does not seem to have needed any discovery in its treble damage action; doubtless for this reason no mention is made in the Su-

preme Court opinion of any pre-trial discovery problem.

Plaintiffs in the case at bar point out that their action is just begun, that they have not been parties to the Commission proceeding, and that pre-trial discovery is needed. Their position is not on its face without merit.

In this state of affairs, it does not seem reasonable to stay all proceedings in the action. It is not the pendency of an action which creates danger of a conflict between Court and Commission; it is the making by the Court (whether with or without a jury) of a decision on the merits. In the case at bar, not yet at issue, no decision on the merits need be apprehended for some time. If the case is about to be reached for trial before final determination in the Courts of the review of the Commission's decision in No. 872, movants may apply then for a stay of the trial and nothing said herein is meant to prejudice any such application.

To stay pre-trial discovery by plaintiffs in the case at bar would seem additionally unreasonable because of the pendency of the libel by defendants against one of the plaintiffs and as to which defendants are proceeding with discovery. It may be noted in passing that since July 1, 1966, there has been a unification of admiralty and civil practice and a saving in time and effort may be possible, either through consolidation under Fed.R.Civ.P. 42 or otherwise.

I have assumed, from the papers on this motion and from the Commission's decision in No. 872, that the issues in the case at bar which would normally be within the primary jurisdiction of the Commission have already been passed upon by the Commission in No. 872. Movants do not seriously contend otherwise. The moving papers rely on the proposition that the various rate agreements and activities of defendants Far East and Pacific Westbound were a carrying out of the Joint Agreement, No. 8200, approved by the Commission; that such rate agreements were not required by Section 15 to be filed with the Commis-

sion for approval; and that the agreements being thus lawful under Section 15 were exempt from the antitrust laws. The first two elements of this proposition have already been considered by the Commission. There is no occasion, therefore, to send plaintiffs to the Commission before entertaining their action here.

The motion for a stay is accordingly denied.

The time within which the moving defendants may answer the complaint, or move with respect to it, is enlarged to September 19, 1966; the time within which the moving defendant Far East Conference may serve written objections to the interrogatories of plaintiffs is enlarged to September 9, 1966; the time within which the moving defendant Far East Conference may serve answers to the interrogatories of plaintiffs is enlarged to September 19, 1966.

So ordered.