## 635

BALTIMORE BANK FOR COOPERA-
TIVES, Plaintiff,

v.

FARMERS CHEESE COOPERATIVES,
Defendant.

Civ. A. No. 75–973.

United States District Court,
W. D. Pennsylvania.

March 21, 1977.

Kenneth P. Simon, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for plaintiff.

H. Woodruff Turner, Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

WEBER, Chief Judge.

Plaintiff in this action is a secured creditor of County Belle Cooperative Farmers, a dairy cooperative now in bankruptcy. Plaintiff seeks to collect for some 1,106,540 pounds of milk Country Belle allegedly sold to defendant. The court previously denied the Motion to Dismiss insofar as it was based on the pending bankruptcy of Country Belle. The question remaining is whether this action is precluded by previous determinations made by the Market Administrator for Eastern Ohio-Western Pennsylvania, Dairy Division, U. S. Department of Agriculture, who makes certain determinations in the course of administering the "producer-settlement" fund and in otherwise regulating the milk industry. The court previously directed the parties to file additional briefs specifically citing authority for the bringing of private suits between two private entities regulated by the Secretary of Agriculture without first exhausting administrative remedies. We also requested clarification as to whether Country Belle, and plaintiff standing in Country Belle's shoes, would be classed a "handler", rather than a "producer" or "producer-handler". The parties both agree that Country Belle was a handler.

While the question of whether exhaustion of administrative remedies is re-

quired is a legal question, an understanding of the facts is also necessary as plaintiff contends that there has been no administrative determination of their rights.

The dispute in this case is whether Country Belle sold the defendant the 1,106,540 pounds of milk or whether Farmers Union Milk Producers Association (FUMPA) sold the milk to defendant. Defendant contends that FUMPA sold it the milk, that defendant paid FUMPA for it, and that the determinations of the Market Administrator as to the credits or liabilities to the producer-settlement fund support its position, and indeed, are binding on plaintiff unless appropriate administrative appeals are made.

It is not apparent from the record what circumstances caused this dispute or confusion over who sold the milk. It appears, however, that the milk passed through the control of both FUMPA and Country Belle, and that one of the two "diverted", or transferred, it to the other. Both FUMPA and Country Belle included the milk in their monthly reports to the Market Administrator.

Defendant relies on a letter from Cleo C. Taylor, Market Administrator, to FUMPA, dated July 15, 1975, to support its position that the Market Administrator determined this issue adverse to Country Belle. The letter reads:

"Your report to this office for the month of June 1975 reflects the diversion of 1,106,540 pounds of member milk from Country Belle to Farmers Cheese, a non-pool plant, pursuant to Sec. 1036.9(b) of Order 36. This quantity was also included in the report filed by Country Belle Cooperative Farmers.

I have tentatively pooled the milk on the basis of your report. This results in a credit of $6,860.55 for producer settlement fund and a charge of $243.44 for administrative fund, or a net credit of $6,617.11.

In view of the status of the bankruptcy of Country Belle, the non-payment of pool obligations since December by Country Belle for milk billed to various parties by Farmers Union, and the duplication in the reports filed for June, I am withholding settlement of the above net credit pending payment of the obligations to this office."

The deposition of Cleo C. Taylor taken upon written interrogatories shows that this letter was not sent to defendant and that it did not amount to "a determination that Farmers Cheese [the defendant] should pay FUMPA for the 1,106,540 pounds of milk." However, in answer to cross-interrogatory number 3, Taylor states that he did "pursuant to the authority vested in [him] under the Agricultural Marketing Agreement Act of 1937 and Federal Order No. 36, determine *that the aforesaid milk was properly included in the report of FUMPA rather than in the report of Country Belle*", and that this determination has not been challenged. A letter was sent to Country Belle from Taylor on July 15, 1975 that states:

"Your report to this office for the month of June included in reported producer receipts and as milk diverted to Farmers Cheese a quantity of 1,106,540 pounds of milk, containing 39,231 pounds of butterfat.

This quantity was also reported to this office as diverted milk by Farmers Union Milk Producers Association, pursuant to Sec. 1036.9(b) of the order.

I have therefore corrected your report to exclude this milk in the computation of your pool obligation for the month of June 1975 to avoid duplication of pooling. This is reflected in enclosed statement."

■ Undoubtedly, the powers of the Market Administrator are broad. See generally 7 C.F.R. 1036. Among these many and varied powers are those set forth in § 1036.77, which gives the market administrator the authority to audit a handler's books and demand payment of any moneys due the market administrator from the handler or any moneys due any producer or cooperative association from such handler, and to make payment of any moneys due the handler from the market administrator. There is no comparable provision by which the handler can recover, through the mar-

ket administrator, amounts due it by a purchaser of the milk.

Defendant contends that under the doctrines of primary jurisdiction and exhaustion of remedies, this suit should be barred as a collateral attack on a ruling of the market administrator. In *Far East Conference v. United States*, 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576 [1952], it is stated that primary jurisdiction is

> "a principle, now firmly established, that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over."

As defendant points out, to decide this case the court must plunge into a morass of regulations, and a conflicting decision with that of the market administrator may threaten the solvency of the producer-settlement fund or of parties the law intended to protect.

As to the doctrine of primary jurisdiction, defendant relies on *Thompson v. Texas Mexican Railway Co.*, 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132 [1948], in which the Supreme Court required a railroad that sued another to enforce a lease of track use privileges to first resort to the Interstate Commerce Commission.

While defendant's position does not appear to be compelled by any authority he has cited, it does make sense that matters such as these be determined by the administrative agency, both for the sake of consistency and because of their expertise as to how the milk industry operates. However, several factors work against defendant's position. First, there is no explicit authority either in case law or regulations, giving the market administrator power to determine a private dispute. Secondly, the administrator has not in fact made such a determination. His ruling that FUMPA, not Country Belle, should be given credit in the producer-settlement fund does not determine the contract rights of the parties, who may have incurred obligations between themselves. Thirdly, although the market administrator may be better prepared to determine matters peculiar to the milk industry, matters of credit, security interests and commercial transactions are more within the province of the court.

The motion will therefore be denied.

### ORDER

AND NOW, March 21, 1977, the Motion of Defendant Farmers Cheese Cooperatives to Dismiss is DENIED, and Defendant is DIRECTED to file its answer to the Complaint within ten days.