**KOCOLENE OIL CORPORATION et al., Plaintiffs,**

**v.**

**ASHLAND OIL, INC. et al., Defendants.**

**No. C-1-79-468.**

United States District Court,
S. D. Ohio, W. D.

Jan. 15, 1981.

Robert E. Manley, Cincinnati, Ohio, for plaintiff.

Stanley Chesley, Cincinnati, Ohio, for defendants.

**ORDER**

CARL B. RUBIN, Chief Judge.

This matter is before the Court upon motion to stay plaintiffs' third cause of action, as set forth in their amended complaint by defendant Ashland Oil. In their third cause of action plaintiffs seek recovery of overcharges resulting from Ashland's calculation of its May, 1973, purchased product costs, commonly known as the base

period purchased product costs, under the Code of Federal Regulations.

The facts that give rise to this dispute are as follows: In May of 1973, Ashland Oil Company received 15,143,188 gallons of motor gasoline from Hess Oil Virgin Island Corporation at a cost of $3,165,926.00. In determining its May, 1973, product costs for purposes of the pricing rules of 10 C.F.R. § 212.83, however, Ashland excluded its purchase and receipt of said 15,143,188 gallons of motor gasoline and instead treated the 15,143,188 gallons as having been purchased in April, 1973. As a consequence of the foregoing, plaintiffs allege that Ashland has improperly determined its allowable recovered Increased Costs in each subsequent month during the relevant period by the sum of $3,165,926.00 in each month (an aggregate of approximately $190,000,000.)

This dispute turns on an interpretation of the word "purchase" as it is used in the Code of Federal Regulations. It is Ashland's position that the word "purchase" means the date on which a binding contract to acquire the product was executed. Under this interpretation, since the contract to purchase the 15,143,188 gallons of motor gasoline was executed in April, 1973; Ashland did not have to include this purchase in its May product costs. Plaintiffs and the Department of Energy's Office of Special Counsel take the position that "purchase" means the date on which the product was actually delivered. Under this interpretation, Ashland understated its May, 1973, purchased product costs and its sale of motor gasoline to plaintiffs, illegally passed through improperly calculated cost increases.

Ashland now moves the Court to stay this action insofar as Count III is concerned on the ground that the issue raised therein is presently under review before the Department of Energy and that the Court should defer to the ongoing administrative proceeding.

█ The doctrine of primary jurisdiction comes into play when a court and an administrative agency have concurrent jurisdiction over the same matter, and no statutory provision coordinates the work of the Court and of the agency. The doctrine operates, when applicable, to postpone judicial consideration of a case to administrative determination of important questions involved by an agency with special competence in the area. It does not defeat the Court's jurisdiction over the case, but coordinates the work of the Court and the agency by permitting the agency to rule first and giving the Court the benefit of the agency's views. *Mercury Motor Express, Inc. v. Brinke*, 475 F.2d 1086, 1091–1092 (5th Cir. 1973).

"The doctrine is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. Primary jurisdiction applies where a claim is originally cognizable in the courts and comes into play wherever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such case the judicial process is suspended pending referral of such issues to the administrative body for its views." *United States v. Western Pacific Railroad*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 164–165, 1 L.Ed.2d 126 (1956). Professor Davis stated in his treatise that the principal reason behind the doctrine of primary jurisdiction is the:

... recognition of [a] need for orderly and sensible coordination of the work of [administrative] agencies and of courts. Whether the agency happens to be expert or not, a court should not act upon [a] subject matter that is peculiarly within the agency's specialized field without taking into account what the agency has to offer, for otherwise the parties who are subject to the agency's continuous regulation may become the victims of uncoordinated and conflicting requirements.

3 K. Davis, *Administrative Law* § 19.01 (1958).

The rationale underlying the doctrine is further explained by Mr. Justice Frankfurter in *Far East Conference v. U. S.*, 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952) wherein he stated that:

... in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.

There is no fixed formula for a court to use in applying the doctrine. In each case the Court must determine whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application to the litigation before the Court. *United States v. Western Pacific R. Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). Two reasons for the doctrine are stated by the courts: (1) the desire for uniformity of regulation; and (2) the need for an initial consideration by a tribunal with specialized knowledge. Applying these principles to the present situation, the Court determines that the primary jurisdiction doctrine is applicable to this case.

### 1. The Desire for Uniformity of Regulation

■ Primary jurisdiction reference to an agency is favored when it will promote even-handed treatment and uniformity in a highly regulated area and when sporadic action by federal courts will disrupt an agency's delicate regulatory scheme. *United States v. Radio Corporation of America*, 358 U.S. 334, 348, 79 S.Ct. 457, 465, 3 L.Ed.2d 354 (1959). This was the original reason for the doctrine as stated by Mr. Justice White in *Texas & Pac. Ry. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 27 S.Ct.

350, 51 L.Ed. 553 (1907). To quote from the opinion of a New York court: "... sound policy would seem to dictate that courts should not interfere ... in matters highly technical in character and often far reaching in their economic consequences, until they have been considered and passed upon by the trained body established for that very purpose and especially equipped to examine the intricate facts commonly involved in [administrative] problems." *Croyden Syndicate v. Consolidated Edison Co.*, 72 N.Y.S.2d 846, 848–849 (Sup.Ct.1947). Uniformity and consistency in the regulation entrusted to a particular agency are secured, and the limited functions of judicial review are more rationally exercised. *Far East Conference v. United States*, 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952); *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 301, 304, 96 S.Ct. 1978, 1985, 1987, 48 L.Ed.2d 643 (1976); see: Schwartz, *Primary Administrative Jurisdiction And the Exhaustion of Litigants*, 41 Geo.L.J. 495, 498 (1953).

The doctrine is particularly applicable to a case such as this where an administrative agency has exercised its primary jurisdiction and is conducting proceedings involving the same question as the Court. See: *Federal Power Com. v. Louisiana Power & Light Co.*, 406 U.S. 621, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972). In this case, as in *Abilene*, refiners are subject to both agency and court sanctions and would be put in an untenable position should the agency and the court disagree on the interpretation of the regulations. *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 299, 96 S.Ct. 1978, 1984, 48 L.Ed.2d 643 (1976). Reference to the agency in this case will promote even-handed treatment and uniformity in this highly regulated industry as well as protect the integrity of the ongoing regulatory scheme. *Far East Conference v. United States*, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952).

### 2. The Need for an Initial Consideration by a Tribunal with Specialized Knowledge.

■ The second rationale for the doctrine of primary jurisdiction is that it should

come into play whenever enforcement of a claim requires resolution of issues which under the regulatory scheme have been placed within the special competence of an administrative body. *United States v. Western Pacific Ry. Co.*, 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). Under this doctrine the courts will not determine a question within the jurisdiction of an administrative tribunal prior to the decision of the tribunal where the question demands the exercise of administrative discretion requiring the special knowledge and experience of the administrative tribunal. *Civil Aeronautics Board v. Modern Air Transport, Inc.*, 179 F.2d 622, 624 (2d Cir. 1949). The concern here is that agencies, with their special expertise, should have the initial opportunity to develop and administer their policies consistently. 3 K. Davis, *Administrative Law Treatise* § 19.01 (1956). Affording the opportunity for administrative action will "prepare the way, if the litigation should take its ultimate course, for a more informed and precise determination by the Court for the scope and meaning of the statute as applied to particular circumstances." *Ricci v. Chicago Mercantile Exchange*, 409 U.S. 289, 306, 93 S.Ct. 573, 582, 34 L.Ed.2d 525 (1973).

This is a case where the experience and expertise of an administrative agency in reviewing facts of a nature not conventionally dealt with by courts of general jurisdiction will provide a useful foundation for later court action. It is precisely this kind of action that the courts have traditionally referred to the agencies for their consideration. As Mr. Justice Brandeis held in *Great Northern R. Co. v. Merchants Elevator Co.*, 259 U.S. 285, 291–292, 42 S.Ct. 477, 479, 66 L.Ed. 943 (1922), where the question is simply one of construction, the courts may pass on it as an issue "solely of law"; however where words are used in a peculiar or technical sense, and where extrinsic evidence is necessary to determine their meaning and proper application, so that the inquiry is essentially one of fact and of discretion in technical matters; the issue must first go to the Commission.

 We find that the instant suit is just such a case. Accordingly, we hold that the agency is the most appropriate body by virtue of its experience and its expertise to interpret the meaning of the regulations and to delineate the purposes undergirding their promulgation.

The Court is of the opinion that the proper action in this case is to stay all proceedings for a period of six months in order to allow the officials of the Department of Energy an opportunity to act on this matter. At that time the Court will entertain all matters presented in this suit.

It is so ORDERED.