**DKT MEMORIAL FUND LTD., et al., Plaintiffs,**

v.

**AGENCY FOR INTERNATIONAL DEVELOPMENT, et al., Defendants.**

Civ. A. No. 85–1668.

United States District Court, District of Columbia.

March 7, 1986.

Richard A. Frank, Michael E. Fine, Pamela S. Krop, Wald, Harkrader & Ross, Washington, D.C., for plaintiffs.

Neil Koslowe, Civ. Div., Dept. of Justice, Washington, D.C., for defendants.

Congressman Bill Green, Congressman Peter H. Kostmayer, House of Representatives, Washington, D.C., Dr. Sharon L. Camp, Vice President for Policy, Population Crisis Committee, Washington, D.C., amicus curiae in Support of Plaintiffs' Motion for Summary Judgment.

## OPINION

JUNE L. GREEN, District Judge.

This is an action for injunctive and declaratory relief brought by three not-for-profit, nongovernmental organizations challenging the lawfulness and constitutionality of a policy of the Agency for International Development ("AID"). Under that policy, foreign nongovernmental organizations ("NGO's") that wish to receive U.S. population planning funds must certify to AID that they do not perform or promote activities relating to voluntary abortion as a method of family planning. Domestic NGO's are not required to make such a certification. Instead, they must agree in their grant contract that they will not subgrant any U.S. funds they receive to foreign NGO's that perform or promote abortion activities in foreign countries as a method of family planning.

Before the Court are cross-motions for summary judgment.[1] For the reasons set forth below, the Court grants defendants' motion on the grounds that plaintiffs lack standing to bring this suit.

## STATEMENT OF FACTS

Plaintiff DKT Memorial Fund Ltd. ("DKT") is a nonprofit, nongovernmental organization which finances and collaborates with other organizations, including plaintiffs Parivar Seva Sanstha ("PSS"), and Population Services Family Planning Programmes Ltd. ("PSFP"), in various family planning programs. DKT is incorporated under the laws of New York.

PSS is registered as a nonprofit society under the Societies Registration Act of In-

---

1. As the Court is not excluding matters presented that are outside the pleading, defendants' motion to dismiss will be treated as one for summary judgment, pursuant to Federal Rules of Civil Procedure 12(b).

dia and has been involved in family planning in India since 1978. PSS operates nine family planning clinics in India, each of which provides a comprehensive range of family planning services including abortion.

PSFP is a nonprofit charity registered in the United Kingdom and a member of the International Council of Voluntary Agencies. PSFP provides technical assistance in the operation of comprehensive family planning clinics around the world. PSFP also engages in certain activities relating to voluntary abortion.

Plaintiffs have contracted jointly to carry out family planning projects, including a four-year comprehensive family planning project in the rural districts of Uttar Pradesh, India (the "Uttar Pradesh project"). The Uttar Pradesh project, which is designed to complement the Indian Government's rural family planning efforts in these areas, would put educators and mobile medical teams into the field in each district to provide comprehensive family planning services. This venture will not provide, or otherwise involve, abortion services or involuntary sterilization. DKT has agreed to serve as the project manager; PSS will act as the implementing agency; and PSFP will provide technical assistance.

Under the Foreign Assistance Act ("FAA") of 1961, as amended, 22 U.S.C. §§ 2151 *et seq.*, the President "is authorized to furnish assistance, on such terms and conditions as he may determine, for voluntary population planning." 22 U.S.C. § 2151b(b). The President has delegated the functions and allocation of funds authorized by 22 U.S.C. § 2151b to the Director of the United States International Development and Cooperation Agency, with certain exceptions, pursuant to Executive Order No. 12163, 44 Fed.Reg. 56673 (1979). The Director of the United States International Development and Cooperation Agency, in turn, delegated that authority to the Director of AID. IDCA Delegation No. 1, 44 Fed.Reg. 57521 (1979), as amended, 45 Fed. Reg. 74090 (1980).

AID provides funds under 22 U.S.C. § 2151b through family planning grants and cooperative agreements to international agencies, foreign governments, foreign and domestic NGO's. In order to receive family planning funds, a potential grantee must be a single entity, it must submit a written application, and it must be prepared to comply with grant or agreement conditions. AID evaluates applications for funds under a variety of criteria, many of which are set forth in a publication known as "AID Handbook 13 (Grants)." Affidavit of John F. Owens, Associate Assistant to the Administrator for Management of AID ("Owens Affidavit") ¶¶ 2–4.

An AID grantee may subgrant the funds it receives to other organizations. AID generally requires that applicants for funds identify principal subrecipients in their applications, or that the grant or cooperative agreement include eligibility criteria for the selection of subrecipients by the grantee and that the subgrant proposal be submitted to AID for review and approval. *Id.* ¶ 5.

At an international conference on population issues held in Mexico City in August 1984, the United States presented a policy statement previously issued by the White House on U.S. funding of voluntary population programs.[2] The statement, formally referred to as the Policy Statement of the United States of America at the United Nations International Conference on Population (Second Session) Mexico, D.F., August 6–13, 1984 ("the Mexico City Policy Statement"), announced a new U.S. policy with respect to the funding of certain organizations which promote or perform abortions in foreign countries as a method of family planning. It provided in relevant part:

the United States does not consider abortion an acceptable element of family planning programs and will no longer contribute to those of which it is a part. Accordingly, when dealing with nations which support abortion with funds not

2. The statement had been issued to the public by the White House on July 13, 1984.

provided by the United States Government, the United States will contribute to such nations through segregated accounts which cannot be used for abortion. Moreover, the United States will no longer contribute to separate non-governmental organizations which perform or actively promote abortion as a method of family planning in other nations.

\* \* \* \* \* \*

U.S. Government authorities will immediately begin negotiations to implement the above policies with the appropriate governments and organizations.

After the Mexico City Policy Statement was issued, AID drafted new standard provisions for insertion in family planning grants and cooperative agreements. The new provisions, revising portions of AID Handbook 13 (Grants), were designed to implement the policy standards. The most recent version of these standards was circulated to AID contracting officers on June 21, 1985. *See* AID Memorandum For All Contracting Officers, June 21, 1985, Subject: Family Planning Assistance Policy ("June 21, 1985, Memo"). These amended standards form the gravamen of plaintiffs' complaint.

The June 21, 1985, Memo requires, *inter alia*, foreign NGO's to certify that they "do not now and will not during the term of this grant perform or actively promote abortion as a method of family planning in AID-recipient countries or provide financial support to any other foreign [NGO] that conducts such activities." June 21, 1985, Memo at 2–3. Domestic NGO's are not required to make this certification. Instead, domestic NGO's are required to agree in their grant agreements that they "will not furnish assistance under this grant to any foreign [NGO] which performs or actively promotes abortion as a method of family planning in AID-recipient countries or which provides financial support to any other foreign NGO that conducts such activities." *Id.*

Plaintiffs contend that these revised standards not only conflict with the statutory scheme established by Congress in the FAA, 22 U.S.C. §§ 2151 *et seq.*, but also contradict important congressional policies. Besides denying them due process of law, plaintiffs argue further that the requirements contained in the June 21, 1985, Memo are arbitrary and capricious.

None of the plaintiffs has ever applied to AID for a family planning grant. *See* Plaintiffs' Responses to Requests for Admission, September 13, 1985, ¶ 7. Furthermore, none of the plaintiffs has ever been denied AID family planning grant or been declared ineligible for AID assistance by any AID official authorized to take such actions. *See* Owens Affidavit ¶ 6; Affidavit of Stephen W. Sinding ¶¶ 1–7.

PSS applied in January of 1983 to the Indian Government for a subgrant under India's Private Voluntary Organization for Health Project (the "Project"). For purposes of clarification, PSS's request can in no way be considered an application to AID.

AID's involvement in the Project dates to an August 31, 1981, grant agreement under which the United States provided funding to the Project. Under the terms of the grant agreement, the Special Grants Committee in India's Ministry of Health and Family Welfare has overall management responsibility for the Project, has overall financial responsibility for the grant funds, and approves or rejects all applications by private Indian organizations for subgrants of funds. The Special Grants Committee is assisted by a Secretariat, an administrative body in India's Ministry of Health and Family Welfare, whose function is to screen applications for subgrants, to evaluate jointly the applications with the AID mission in India, and to inform applicants about the disposition of their applications.

The AID mission in India reviewed PSS's application, and on February 12, 1985, its deputy director advised the undersecretary of India's Ministry of Health and Family Welfare, K.L. Bhatia, that AID could not support it. Letter from Richard Brown, deputy director of AID mission, to Bhatia. On June 18, 1985, Bhatia informed PSS

that the Government of India had rejected PSS's application. Bhatia said that in accordance with the grant agreement between the United States and India, "no portion of the grant proceeds can be attributed to sterilization or abortion related cost." Letter from Bhatia to PSS. He added that PSS "primarily performs or promotes abortion as a method of Family Planning and such activities are not eligible for funding under this [Project]." *Id.*

## CONCLUSIONS OF LAW

### Standing

Article III restricts the jurisdiction of federal courts to "cases and controversies," and "whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III … is the threshold question in every federal case." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Despite the apparent simplicity of that inquiry, the standing issue is complex and confused and cannot be reduced to absolute rules.

 "The essence of the standing inquiry is whether the parties seeking to invoke the court's jurisdiction have 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination'" of difficult questions. *Duke Power Co. v. Carolina Environmental Study Group,* 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978) (quoting *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)). The Supreme Court has given shape to the concept of Article III standing in recognizing certain basic requirements. The plaintiff must allege an "injury in fact" and a causal connection between the injury and the challenged conduct. *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758–59, 70 L.Ed.2d 700 (1982). The requisite injury has been variously described as "distinct and palpable," *Warth v. Seldin,*

422 U.S. at 501, 95 S.Ct. at 2206, and not "abstract," "hypothetical," or "conjectural." *O'Shea v. Littleton,* 414 U.S. 488, 498, 94 S.Ct. 669, 677, 38 L.Ed.2d 674 (1974). The causal element essentially requires a showing by plaintiff that the injury is "fairly traceable" to the challenged conduct. *Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977).

Application of these constitutional standards to the present case convince the Court that plaintiffs do not meet the Article III requirements for standing. Unlike the appellee in *Regents of University of California v. Bakke,* 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978), plaintiffs have never applied to AID for funding and the challenged policy in no way prevents them from applying for funding. At most, plaintiffs are able to assert that submitting an application to AID would be futile based upon their understanding of the Mexico City Policy Statement and the June 21, 1985, Memo.

 The "chilling effect" which is produced by their fear of being denied funding based upon a putatively illegal policy is foreclosed as a basis for standing by the Supreme Court's holding in *Laird v. Tatum,* 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). There the plaintiffs alleged that a program of intelligence gathering conducted by the Army chilled the exercise of their First Amendment rights of speech and assembly. The Court declined to entertain the suit, holding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or threat of future harm." *Id.* at 13–14, 92 S.Ct. at 2325–26; *cf. Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 3326, 82 L.Ed.2d 556 (1984) (reaching similar conclusion regarding the stigmatization effect of governmental action).

 Courts do not require that a plaintiff-applicant prove that he would qualify for, or receive, a desired grant or contract in order to establish standing. *Regents of*

*University of California v. Bakke,* 438 U.S. at 280–81 n. 14, 98 S.Ct. at 2742–43 n. 14. On the other hand, the nonapplicant must bear the burden of coming forward with information that he would have presented in an application. *Teamsters v. United States,* 431 U.S. 324, 369 n. 53, 97 S.Ct. 1843, 1872 n. 53, 52 L.Ed.2d 396. Plaintiffs seek an opportunity to compete for AID funds absent the Mexico City Policy requirements. Plaintiffs concede that they have never applied for AID funding, yet they offer only vague, self-serving statements to indicate that they would otherwise qualify for AID funding. *See, e.g.,* AID Handbook 13 (Grants); *compare Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. at 264, 97 S.Ct. at 563 (undisputed fact that plaintiff-applicant was qualified for benefit save unlawful action by the local government was "injury in fact") and *West Virginia Ass'n of Community Health Centers v. Heckler,* 734 F.2d 1570, 1575–76 (D.C.Cir.1984) (plaintiff had standing to challenge allocation of federal funds because they demonstrated that they would qualify to receive these funds thereby adequately averring a causal relationship between defendant's policy and plaintiff's asserted injury).

■ Even had plaintiffs submitted information tending to show that they satisfy all the AID requirements, the Mexico City Policy aside, this Court would be wrong to intrude upon the agency's area of expertise by offering its determination of plaintiffs' suitability. *See Far East Conference v. United States,* 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952) (in cases raising issues of fact not within conventional experience of judges or cases requiring exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over); *accord Engelhardt v. Consolidated Rail Corp.,* 756 F.2d 1368, 1369 (2d Cir.1985).

■ Furthermore, unlike the plaintiff in *Planned Parenthood Association of Chicago v. Kempiners,* 700 F.2d 1115 (7th Cir.1983), DKT, PSS, and PSFP cannot point to a "track record" of functional experience with the agency process, having applied for and received funding in the past. In *Planned Parenthood,* the plaintiff challenged the constitutionality of a state statute denying it state funds under a program dealing with problem pregnancies because they offered its clients abortion counseling and referral services. The plaintiff's application for funds was rejected for reasons apparently having nothing to do with the challenged statute. In a *per curiam* opinion, the Court of Appeals remanded the case for taking of additional evidence on the issue of standing. Though difficult to distill a line of reasoning common to the three separate opinions issued, of significance is the fact that the plaintiff did submit an application for funding to the state agency responsible for the program.

The plaintiffs are each involved in the population planning business. While they may well benefit should they receive AID funding, plaintiffs have suffered no injury traceable to the challenged policy nor do the parties share any sort of a relationship to indicate something more than plaintiffs' generalized interest in AID's funding policy. *See Babbit v. United Farm Workers Union,* 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (something more than plaintiff's general concern is necessary to evidence a genuine controversy). Moreover, plaintiffs have not demonstrated an injury to themselves that is likely to be redressed by a favorable decision of their claim. *Warth v. Seldin,* 422 U.S. at 498, 95 S.Ct. at 2204–05. Were the Court to invalidate AID's implementation of the Mexico City Policy Statement today, plaintiffs would be in no better position to receive funding tomorrow as they have never applied nor been rejected for AID funding.

■ "[T]he difference between an abstract question and a 'case or controversy' is one of degree ... and is not discernible by any precise test." *Babbit v. United Farm Workers Union,* 442 U.S. at 297, 99 S.Ct. at 2308. Consistent with the Constitution and sound prudential limitations, this Court's inquiry leads it to conclude that

plaintiffs' asserted injury is not "distinct and palpable" and, therefore, not sufficient to meet the Article III requirements for standing.[3] *Warth v. Seldin*, 422 U.S. at 501, 95 S.Ct. at 2206. An order is attached.

---

**3.** Given this threshold determination, normal, circumspect practice counsels against proceeding further. Nonetheless, the Court feels compelled to note that even had plaintiffs surmounted the standing barrier, they would have been foreclosed by the political question doctrine. *See Metzenbaum v. Federal Energy Regulatory Com'n.*, 675 F.2d 1282 (D.C.Cir.1982); 22 U.S.C. § 2151b(a), (b).