**ITT WORLD COMMUNICATIONS INC., ITT Domestic Transmission Systems, Inc., and O. M. Scott & Sons, Inc., Plaintiffs,**

v.

**WESTERN UNION TELEGRAPH COMPANY, Defendant.**

**No. 80 Civ. 5745(MEL).**

United States District Court, S. D. New York.

Oct. 22, 1981.

---

LeBoeuf, Lamb, Leiby & MacRae, New York City, for plaintiffs; Grant S. Lewis, John S. Kinzey, Frederick R. Dettmer, Kim H. Sperduto, Joseph J. Jacobs, Theodore J. Fischkin and Susan I. Littman, New York City, of counsel.

William Warfield Ross, Steven K. Yablonski, Mark Schattner, A. Richard Metzger, Jr., Jane Seigler, Wald, Harkrader & Ross, Washington, D. C., Ernest Walton, New York City, for defendant; John D. Appel, Vice President-Gen. Counsel, W. U. Tel. Co., Upper Saddle River, N. J., Joel Yohalem, Gen. Solicitor, W. U. Tel. Co., Washington, D. C., Milton J. Grossman, Washington, D. C., of counsel.

LASKER, District Judge.

Plaintiffs, three subsidiaries of the International Telephone and Telegraph Company,[1] allege that Western Union ("WU") has violated and continues to violate Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, by 1) refusing to interconnect with plaintiffs' domestic and international telex transmission lines, 2) using its monopoly over domestic telex service to gain a competitive advantage in the provision of international service, and 3) entering into a contract with TRT, an international telex carrier, assuring TRT at least 50,000,000 minutes of outbound international telex traffic from the WU network and gaining TRT's assistance in WU's provision of international telex service.[2] WU moves under Fed.R. Civ.Pr. 12(b)(6) to dismiss the portions of the complaint relating to WU's provision of international telex service on the ground that the allegations fail to state a claim upon which relief can be granted and under Fed.R.Civ.Pr. 12(b)(1) to stay the remaining antitrust claims under the doctrine of primary jurisdiction. The motion is denied.

I.

WU first argues that plaintiffs' allegations regarding WU's provision of international telex service fail to state a claim upon which relief can be granted because the complaint fails to assert how this market entry, ordinarily an action *furthering* competition, violated the antitrust laws or how WU's contracts with TRT constituted an unlawful combination or conspiracy to

---

1. ITT World Communications, Inc. provides international "record" (or non-voice) communications. ITT Domestic Transmission Systems, Inc. furnishes domestic record communications services. O. M. Scott is a subscriber to WU's domestic telex exchange and a user of international telex services. Complaint, ¶¶ 2–4.

2. Subsequent to our decision in *RCA Global Communication, Inc. v. Western Union Telegraph Company*, 521 F.Supp. 998 (S.D.N.Y. 1981), plaintiffs amended their complaint to include claims under the Communication Act relating to WU's entry into the international telex market. Those claims are not involved in the present motion.

restrain the provision of international telex service. Moreover, WU contends, plaintiffs lack standing because the complaint fails to allege the requisite "antitrust injury" under *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). According to WU, any injury which plaintiffs suffered was caused by increased rather than decreased competition.

■ WU's contention is unpersuasive. First, the complaint upon a fair reading alleges WU's entry into the international telex service market as part of a more general scheme on the part of WU to restrain competition in both the domestic and international telex markets.[3] In considering WU's motion to dismiss, the complaint must be read as a whole. *Continental Ore Company v. Union Carbide & Carbon, Corp.,* 370 U.S. 690, 699, 82 S.Ct. 1404, 1410, 8 L.Ed.2d 777 (1962). Thus, even if WU's international telex service and contracts with TRT were in themselves legal, "they lose that character when they become constituent elements of an unlawful scheme." *Continental Ore Company v. Union Carbide & Carbon, Corp., supra* at 707, 82 S.Ct. at 707.

Second, the complaint does not allege simply that WU entered the international telex market, as WU's argument asserts, but rather than WU "used its domestic telex monopoly to gain a competitive advantage in the provision of international telex service," Complaint, ¶ 20(c). "[T]he use of monopoly power attained in one market to gain a competitive advantage in another is a violation of § 2, even if there has not been an attempt to monopolize the second market." *Berkey Photo Inc. v. Eastman Kodak Company,* 603 F.2d 263, 276 (2d Cir. 1979).[4] Moreover, while *Berkey* did not directly address the issue of "antitrust injury" and standing, its necessary implication is that a competitor in the market in which another company is unfairly using its monopoly power to gain a competitive advantage has standing to sue. Such a result is entirely consistent with the requirements of *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., supra* 429 U.S. at 489, 97 S.Ct. at 697, that plaintiffs must prove "injury of the type the antitrust laws were intended to prevent . . . ."

■ Third, the complaint alleges that WU and TRT agreed that WU would guarantee 50,000,000 minutes of outbound inter-

**3.** The complaint in relevant part alleges:

"18. For many years past and continuing to and including the date of this Amended Complaint, Western Union has been engaged in an unlawful combination and conspiracy to restrain interstate trade and commerce unreasonably and to monopolize, and has attempted to monopolize and has monopolized interstate trade and commerce in the provision of domestic telex service.

19. Since some time prior to September, 1979 and continuing to and including the date of this Complaint, Western Union has been engaged in an unlawful combination and conspiracy to restrain unreasonably interstate and foreign trade and commerce in the provision of international telex service.

20. In furtherance of the aforesaid combinations and conspiracies to restrain trade and combination and conspiracy to monopolize, and attempt to monopolize and monopolization, Western Union has, among other things:

(a) refused to interconnect with ITTDTS, and refused to provide ITTDTS with the standard subscriber lines which Western Union routinely provides to its non-carrier customers;

(b) refused to interconnect with ITT Worldcom, and refused to provide ITT Worldcom with the standard subscriber lines which Western Union routinely provides its non-carrier customers, except in the two gateway cities of New York and San Francisco;

(c) used its domestic telex monopoly to gain a competitive advantage in the provision of international telex service;

(d) entered into a series of contracts with TRT which, among other things, assured that TRT would receive at least 50,000,000 minutes of outbound international telex traffic that was routed through the Western Union nationwide network and that TRT would assist it in rendering Western Union International Telex Service."

**4.** The complaint is unclear as to whether the other actions on the part of WU alleged in the complaint constitute the unfair use of monopoly power which is alleged, or whether plaintiffs rely on unstated facts to satisfy the *Berkey Photo* requirements. This issue should be clarified during discovery.

national traffic and that TRT would assist WU's entry into the international telex market, thereby foreclosing plaintiffs from competing for that portion of the market. It is established that if a contract effects an unreasonable restraint of trade, a company foreclosed by that contract may bring an antitrust action under Section 1 of the Sherman Act, 15 U.S.C. § 1. *See, e. g., Bigelow v. RKO Radio Pictures,* 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652, *reh. denied,* 327 U.S. 817, 66 S.Ct. 815, 90 L.Ed. 1040 (1946); *Pacific Coast Agricultural Export Ass'n v. Sunkist Growers, Inc.,* 526 F.2d 1196 (9th Cir. 1975), *cert. denied,* 425 U.S. 959, 96 S.Ct. 1741, 48 L.Ed.2d 204 (1976). While WU asserts that its contract with TRT did not violate the antitrust laws because it effected only a small portion of the market, that factual issue cannot be determined on the pleadings. In any event, such an argument ignores the central questions whether the contract was in furtherance of a more general scheme to unreasonably restrain trade in the international telex market and whether it was reasonable in the circumstances of the particular market structure.

## II.

WU next contends that, because of alleged repugnancy between the antitrust laws and the Communications Act's regulatory scheme, it should be concluded that Congress impliedly repealed the application of the antitrust laws to the transactions here involved. The argument runs that because the Act grants the FCC the power to determine whether a new carrier is authorized to enter a market, antitrust actions based on a market entry authorized by the FCC would undermine the FCC's jurisdiction under the Act and would force regulated parties to proceed at the risk of antitrust liability.

WU's argument that antitrust liability is repugnant to the regulatory scheme of the Communications Act is without merit. As the Court of Appeals of this Circuit recently held, the extensive regulation of the communications industry is an insufficient ground from which to infer repeal of the antitrust laws. *Northeastern Telephone Company v. American Telephone and Telegraph Company,* 651 F.2d 76 (2d Cir. 1981); *see also Essential Communications Systems, Inc. v. American Telephone & Telegraph Company,* 610 F.2d 1114 (3d Cir. 1979); *Litton Systems, Inc. v. American Telephone & Telegraph Company,* 487 F.Supp. 942 (S.D. N.Y.1980); *United States v. American Telephone & Telegraph Company,* 461 F.Supp. 1314 (D.D.C.1978). Nor does the specific FCC authorization for WU to enter the international telex market relied on in this case create the repugnancy which WU asserts. To the contrary, the FCC authorization was itself repugnant to the Communications Act, which by its own terms forbade WU from entering that international telecommunications market. *ITT World Communications, Inc. v. Federal Communications Commission,* 635 F.2d 32, 43 (2d Cir. 1980); *see RCA Global Communications, Inc. v. Western Union Telegraph Company,* 521 F.Supp. 998 at 1004–1005 (S.D.N.Y. 1981). In any event, the FCC did not affirmatively order WU to begin international telegraph operations, but merely decided that such operations would not violate the Communications Act. Whatever authority the FCC determination may have conferred on WU, it did not authorize WU to enter the international telex market in such a manner as to violate the antitrust laws.[5]

## III.

WU proposes that this litigation should be stayed under the doctrine of primary jurisdiction because proceedings involving

---

5. WU also argues that the FCC's authorization of its entry into the international telex market served to immunize its conduct from damage liability and that the Court of Appeals' decision reversing the FCC, *ITT World Communications, Inc. v. Western Union Telegraph Company,* 635 F.2d 32 (2d Cir. 1980), should not be applied retroactively to impose liability for those actions. This precise contention was considered and rejected in our decision in *RCA Global Communication, Inc. v. Western Union Telegraph Company, supra.* For the same reasons, it is rejected here.

the same issues are pending before the FCC. According to WU, the FCC's resolution of those proceedings is likely to moot significant portions of this litigation and at the least would be a material aid in consideration of the issues presented.

Plaintiffs disagree that proceedings pending before the FCC raise the same issues as in this lawsuit and argue that in any event a stay is inappropriate because 1) a stay is not necessary to avoid conflict between the FCC and the court because the FCC has no jurisdiction to pass upon antitrust claims, 2) regardless of FCC action, the court will retain jurisdiction of the antitrust claims and therefore discovery should proceed, 3) discovery will permit crystallization of the issues at which time it can be determined whether a primary jurisdiction referral would be useful, 4) the FCC has no special expertise with respect to antitrust claims, and 5) the FCC has already made its views clear.

Since the submission of the instant motion, the FCC has issued decisions in four proceedings originally asserted by WU to be relevant to some of the issues presented by this suit. In its decisions the FCC 1) denied the petitions of international record carriers (including ITT World Communications, Inc.) for interconnection with WU and related damage claims based on refusals to interconnect, 2) vacated its July, 1980 order which had found that WU's refusal to interconnect at the five historic gateways and Miami violated the Communications Act and its earlier Policy Statement, 3) rejected WU's interconnection tariff filed pursuant to the July, 1980 order on the ground that it would be duplicative and confusing since that order had been vacated, and 4) held that ITT Worldcom had violated the Communications Act and an FCC order by joint marketing between ITT Domestic Transmission Systems, Inc. and other ITT carrier subsidiaries.

WU argues that, despite these FCC decisions, a stay is appropriate to await the conclusion of the FCC's investigation of WU's interconnection practices and the FCC's enquiry concerning a possible rule-making to establish a broad domestic interconnection policy. WU also contends that this action should be stayed pending the FCC's consideration of petitions for rehearing with respect to its recent interconnection decisions ( # 1–3, *supra*).

Plaintiffs respond that the FCC's recent interconnection decisions moot WU's assertion that this action should be stayed in favor of pending FCC proceedings involving interconnection disputes. Plaintiffs contend that the recent decisions adequately reflect the FCC's views on the issues for which WU seeks a stay while demonstrating the irrelevance of those views to the antitrust claims at issue here. Moreover, plaintiffs emphasize the FCC's own distinction between antitrust and Communications Act requirements, noting that when the FCC declined to address the antitrust implications of WU's interconnection practices, it stated that "inasmuch as these claims are pending before a federal district court [i.e. this court], efficient use of limited Commission resources suggests that we not duplicate the Court's efforts," although it "stands ready to treat any issues which the Court may want to refer to us under the primary jurisdiction doctrine." *In re ITT World Communications, Inc. v. Western Union Telegraph Company*, FCC 81–327, August 18, 1981, pp. 10–11. Plaintiffs add that the FCC's investigation of WU's interconnection practices is being conducted in secret and that it is therefore impossible to determine whether it would aid the resolution of this suit and that the possibility of a formal rulemaking procedure concerning interconnection obligations does not warrant a stay since any rules which might be adopted would concern only future interconnection policy. The final proceeding relied on by WU concerns investigations into the IRCs compliance with "unbundling" orders which, plaintiffs assert, have absolutely no relevance to this case.

We decline to apply the doctrine of primary jurisdiction. The doctrine is intended to accommodate the "complementary roles of courts and administrative agencies," *Far East Conference v. United States*, 342 U.S. 570, 575, 72 S.Ct. 492, 494, 96 L.Ed.

576 (1952), by ensuring that "in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over." *Far East Conference v. United States, supra* at 574, 72 S.Ct. at 494. With respect to the claims relating to WU's provision of international communications service, the significant factual and Communications Act issues have already been resolved by the decision of the Court of Appeals in *ITT World Communications v. Federal Communications Commission,* 635 F.2d 32 (2d Cir. 1980). Since the same factual allegations form the basis for the plaintiffs' antitrust claims with respect to WU's international telex service here, and since there is no reason to suppose that FCC action will shed any more light on these facts than it already has, *see RCA Global Communications, Inc. v. Western Union Telegraph Company,* 521 F.Supp. 998 (S.D.N.Y.1981), a stay for a referral of the issues to the FCC would serve no useful purpose.

With respect to the claims involving WU's interconnection practices, we agree with plaintiffs that the FCC's recent decisions concerning WU's interconnection obligations under the Communications Act make a stay of this suit under the doctrine of primary jurisdiction pointless. The FCC's recent orders express at length its views on the extent of WU's interconnection obligations under the Act. Indeed, WU presents no particular legal or factual issue on which the FCC's views are unclear or which should be referred to the FCC to aid in the disposition of the antitrust claims here. Moreover, we are persuaded that there are no further pending proceedings which would warrant a stay of discovery in this suit. WU does not contest plaintiffs' assertion that the FCC investigation into WU's interconnection practices are being conducted in secret. Assuming the accuracy of this representation, it would be impossible for the parties to keep us appraised of the progress of the investigation or to determine how long the investigation may last. In these circumstances, a stay of indefinite duration in favor of an agency proceeding of undetermined scope might unduly delay resolution of this suit. Similarly, WU has failed to demonstrate that the possibility that the FCC may institute its rulemaking procedure with respect to interconnection policy supports a stay. That possibility is at most speculative and, in any event, any rule made would be relevant only to future interconnection obligations. Given the remote possibilities that the FCC will reconsider its lengthy analysis of WU's interconnection duties expressed in its recent orders, reverse itself, and do so within a reasonable time so that progress of the case here is not unduly delayed, a stay pending the FCC's decision on the pending petitions for reconsideration is unwarranted. Finally, the pending FCC proceedings concerning the IRCs compliance with "unbundling" orders appear to have no relevance to the issues in this suit. Of course, should the FCC issue a decision while this suit is pending which the parties believe is relevant to the issues here, they may bring the decision to our attention. This arrangement ensures both that we will have the benefit of the expressed views of the FCC on the subject of interconnection and that the plaintiffs are not unduly delayed in the prosecution of their suit.

WU's motion to dismiss portions of the complaint and to stay the remaining portions of the complaint is denied.

It is so ordered.