ITT WORLD COMMUNICATIONS,
INC., et al., Plaintiffs,

v.

The WESTERN UNION TELEGRAPH
COMPANY, Defendant.

RCA GLOBAL COMMUNICATIONS,
INC., Plaintiff,

v.

The WESTERN UNION TELEGRAPH
COMPANY, Defendant.

Nos. 80 Civ. 5745(MEL), 80
Civ. 6387(MEL).

United States District Court,
S.D. New York.

Dec. 6, 1984.

See also, D.C., 598 F.Supp. 1439.

Wald, Harkrader & Ross, Washington, D.C., Lane & Mittendorf, New York City, for defendant; Mark Schattner, Washington, D.C., Alan R. Wentzel, New York City, Joel Yohalem, Deputy Gen. Counsel, H. Richard Juhnke, Sol. Gen., Western Union Telegraph Co., Washington, D.C., of counsel.

LeBoeuf, Lamb, Leiby & MacRae, New York City, and Peter M. Andersen, Richard J. Heitmann, Secaucus, N.J., for plaintiff ITT World Communications, Inc.; Grant S. Lewis, John S. Kinzey, Charles C. Platt, New York City, of counsel.

Cahill, Gordon & Reindel, and Francis J. DeRosa, Charles M. Lehrhaupt, Jeffrey Frackman, New York City, for plaintiff RCA Global Communications, Inc.; H. Richard Schumacher, Howard G. Sloane, Kathy M. Silberthau, New York City, of counsel.

LASKER, District Judge.

In earlier determinations, plaintiffs'[1] motions for partial summary judgment were granted on the issue of defendant Western Union Telegraph Co.'s ("WU") liability to them for violating the Communications Act of 1934. 47 U.S.C. §§ 201–22 (1976).[2] Plaintiffs now move for summary judgment awarding ITT and RCA respectively: (1) approximately $1.2 million and $1 million in actual damages; and (2) pre-judgment interest on those amounts. WU does

---

1. Three subsidiaries of the International Telephone and Telegraph Co. ("ITT"), and RCA Global Communications, Inc. ("RCA").

2. *See ITT World Communications Inc. v. Western Union Tel. Co.*, 524 F.Supp. 702 (S.D.N.Y. 1981); *RCA Global Communications, Inc. v.*

*Western Union Tel. Co.*, 521 F.Supp. 998 (S.D.N.Y.1981). The unpublished endorsements were dated February 26, 1982 and were filed on March 1, 1982. They relied upon the reasons found in the published opinions to award plaintiffs partial summary judgment.

not dispute the actual damage amounts but opposes an award of pre-judgment interest. For the reasons discussed below, the motion is granted as to actual damages and pre-judgment interest.

## I.

The facts and history of this case are set forth in the opinions cited in the margin below and in *ITT World Communications, Inc. v. FCC,* 635 F.2d 32, 45 (2d Cir.1980). This litigation resulted from WU's unlawful entry into the market for international telecommunications services in September of 1979—an act prohibited under Section 222 of the Communications Act, 47 U.S.C. §§ 222(c)(2) & (e) (1976),[3] as made manifest by the Court of Appeals for the Second Circuit in *Western Union International, Inc. v. FCC,* 544 F.2d 87, 92 (2d Cir.1976), *cert. denied,* 434 U.S. 903, 98 S.Ct. 299, 54 L.Ed.2d 189 (1977) (*"Mailgram"*). Although the Federal Communications Commission ("FCC") issued a December, 1979 order sanctioning WU's conduct, the Court of Appeals set aside that order and emphasized that its *Mailgram* opinion had "firmly settled" the rule prohibiting WU from engaging in "international telegraph operations" at any time. *ITT World Communications Inc. v. FCC, supra,* 635 F.2d at 40. When WU continued to solicit customers for its international service even after the Court of Appeals had ruled, the company was cited by the court for its "contemptuous conduct." *Id.* at 47.

RCA subsequently filed its suit captioned above to recover damages under the Communications Act which, in an opinion published at 521 F.Supp. 998, survived defendant's motion to dismiss. Following that decision, three ITT subsidiaries amended their pending antitrust complaint against WU to include Communications Act claims. Summary judgment as to WU's liability under the Communications Act was grant-ed to both groups of plaintiffs by way of unpublished endorsements dated February 26, 1982.[4] Plaintiffs in both actions have now jointly moved for summary judgment to obtain awards of actual damages and pre-judgment interest.

## II.

WU does not oppose the actual damage amounts sought by plaintiffs and that portion of their motion is accordingly granted.

WU does, however, vigorously oppose an award of pre-judgment interest on several grounds: that the company obtained no "windfall" from its illegal conduct; that because the amount of damages in dispute was not independently ascertainable by WU an award of prejudgment interest is "inappropriate as a matter of law;" that such an award is also "inappropriate" because WU resisted plaintiffs' claims based upon substantial legal defenses and acted without any "dark or evil purpose;" that an award of attorney's fees under the Communications Act is sufficient; that a prejudgment interest award based upon the daily prime interest rate is excessive; and that equitable principles do not favor an award.

With respect to the last point, WU contends that a number of factors have inflated the size of plaintiffs' damage claims. WU concedes that plaintiffs' claims are based upon the WU's own study of its contingent liability. It argues, however, that, because RCA's share of that market has consistently declined since 1959, plaintiffs have overstated their losses resulting from WU's illegal entry into the international telecommunications market and that any loss of market share should be attributed to that decline, not WU's unlawful entry. WU also refers to ITT internal memoranda which suggest that ITT's losses from WU's market entry were less than half of its claimed actual damages. WU

---

**3.** At the time WU entered this market, Section 222 prohibited it from engaging in "international telegraph operations." Congress subsequently amended the Act to remove this prohibition in December, 1981. Record Carrier Competi-tion Act of 1981, Pub.L. No. 97–130, 95 Stat. 1687 (97 Cong. 1st Sess. 1981) (codified as amended at 47 U.S.C. § 222 (1982)).

**4.** *See supra* note 2 and accompanying text.

further asserts that its market entry did not cause plaintiffs to lose shares of the market in question because it offered its service at a lower price than RCA and ITT, thereby expanding demand, and the market, for international telecommunications. In addition, WU claims plaintiffs exaggerated the size of their market shares when they calculated their actual damages because the presence of "pirate" international telecommunications carriers makes the actual market for these services larger than the one plaintiffs assume exist. Finally, WU contends that plaintiffs' claims are overstated because they are based only upon estimates of lost revenues, do not take into account the cost of handling additional telecommunications, and because the rates which the plaintiffs rely upon to develop their damage estimates are too high.

Plaintiffs do not address WU's economic arguments. They rely, rather on the substantial weaknesses in WU's legal defense which supported the conclusion in the earlier opinion that "[r]ather than relying on any rule of law [to justify its entry into the international telecommunications market], it would appear that WU begain its overseas operation in blatant violation to the extant law." *RCA Global Communications, Inc. v. Western Union Telegraph Co., supra,* 521 F.Supp. at 1005. Plaintiffs have also appended to their reply memorandum a copy of a full page WU advertisement which ran in major newspapers in October of 1979 introducing their unlawful service and stating "Western Union would like to go overseas directly, but the law [, namely, the Communications Act,] says we can't. To prove a point about this obsolete law ... Western Union has recently decided to work out an alternative solution." As discussed above, however, the Court of Appeals held that the "solution" in question was prohibited by the law then in force. *See ITT World Communications Inc. v. FCC, supra,* 635 F.2d at 40. In addition, plaintiffs note that WU was cited for contempt for its refusal to abide by the Court of Appeals' decision. *See id.* at 47.

Plaintiffs also assert that the amount of damages in dispute was readily ascertaina-ble, as evidenced by WU's study of its own possible liability to the plaintiffs, and that even if this were not the case, they are not precluded as a matter of law from recovering pre-judgment interest. Plaintiffs argue that the equities of the case support such an award to compensate them for revenues which otherwise would have been available for their use. They also point out that equitable considerations justify an award in this instance in light of, *inter alia*, WU's knowing violation of the Communications Act, its citation for contempt by the Court of Appeals, and its unnecessary delay in providing documents to expedite a determination of its actual liability.

### III.

We find, contrary to WU's assertions, that it is not "inappropriate" as a matter of law to award plaintiffs pre-judgment interest. Indeed, the cases which the company relies upon in support of this proposition are in harmony with the Court of Appeals view that a pre-judgment interest award

> "in cases arising under federal law has in the absence of a statutory directive been placed in the sound discretion of the district courts." *Lodges 743 & 1746, International Association of Machinists v. United Aircraft Corp.,* 534 F.2d 422, 446 (2d Cir.1975), cert. denied, 429 U.S. 825, 97 S.Ct. 79, 50 L.Ed.2d 87 (1976). Consistent with this general principle, we have repeatedly recognized the power of district courts to award pre-judgment interest. See, e.g., id. at 446–47; *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.,* 516 F.2d 172, 191 (2d Cir.1975), rev'd on other grounds, 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977); *The Wright,* 109 F.2d 699, 702 (2d Cir.1940); see also *Blau v. Lehman,* 368 U.S. 403, 414, 82 S.Ct. 451, 457, 7 L.Ed.2d 403 (1962).

*Waterside Navigation Ltd. v. International Navigation Ltd.,* 737 F.2d 150, 153 (2d Cir.1984); *accord Rolf v. Blyth, Eastman Dillon & Co.,* 637 F.2d 77, 86 (2d Cir.1980); *United States v. Consolidated Edison Co.,*

452 F.Supp. 638, 658–59 (S.D.N.Y.), *aff'd,* 580 F.2d 1122 (2d Cir.1978).

The equities of this case clearly justify awarding plaintiffs pre-judgment interest. At the time of its earlier actions WU was aware that the Communications Act and the Court of Appeals' *Mailgram* ruling prohibited its entry into the international telecommunications market, yet it chose to disregard the law and instead advertise its willful stance. Moreover, WU added insult to injury by ignoring the Court of Appeals' directive to cease soliciting customers for its unlawful service. These facts strongly support our earlier conclusion that "WU began its overseas operation in blatant opposition to the extant law," *RCA Global Communications, Inc. v. Western Union Telegraph Co., supra,* 521 F.Supp. at 1005, and alone warrant a prejudgment interest award. Moreover, although not decisive, it is undisputed that for several months WU delayed giving plaintiffs its study of its contingent liability, which would have speeded the disposition of the present motion. Taken together, the equitable considerations in this case justify an award of interest.[5]

Having found that plaintiffs are entitled to prejudgment interest there remains for determination the rate of interest to be applied and the date from which it should be paid. Citing *Chris Craft Industries, Inc. v. Piper Aircraft Corp., supra,* 516 F.2d at 191, WU contends that plaintiffs' method of calculating pre-judgment interest, based on the prima rate compounded from the date when their cause of action accrued on September 15, 1980, results in an award that is "punitive" not compensatory. It asserts that the interest rate requested by plaintiffs is "excessive" as compared to the rate allowable under New York law and is without basis, as is plain-

tiffs' request that the rate be compounded from September 15, 1980.

The Court of Appeals has ruled that the District Court has "broad discretion to fix the rate of interest" and that plaintiffs are "entitled to the income which the monetary damages would have earned, and that should be measured by interest on short-term risk-free obligations." *Independent Bulk Transport, Inc. v. Vessel "Morania Abaco",* 676 F.2d 23, 27 (2d Cir.1982); *see also Red Star Barge Line, Inc. v. Nassau County Bridge Authority,* 683 F.2d 42, 45 (2d Cir.1982); *Black Sea & Baltic General Insurance Co. v. S.S. Hellenic Destiny,* 575 F.Supp. 685, 695 (S.D.N.Y.1983). Moreover, we see no reason why New York law should establish the rate in a case such as this one, which arises out of federal claims, involves multinational parties, and is being adjudicated in a federal forum. We conclude that the rule of the decisions cited above should apply and that pre-judgment interest should be awarded at the rate applicable to short-term risk-free obligations.

We further conclude that the pre-judgment interest award should be calculated from September 15, 1980 as proposed by the plaintiffs. By this date plaintiffs had suffered the full consequences of WU's unlawful conduct. Indeed, it is not inconceivable that plaintiffs could make out a case for payment of pre-judgment interest as of the date when WU entered the international telecommunications market in September of 1979 inasmuch as they were deprived of revenues from that time onward.

On the other hand, WU's arguments challenging the size of plaintiffs' actual damages raise good faith questions as to whether a trial would establish plaintiffs'

**5.** *United States v. Consol. Edison Co., supra,* 452 F.Supp. at 659, a case relied upon by WU is distinguishable. In that decision, one of the reasons cited by then District Judge Pierce for not awarding pre-judgment interest was that it could not be said that the defendant's resistance to the lawsuit was in bad faith. The equitable considerations found in this case, however, justify such an award.

In addition, even if WU's claim that it was not unjustly enriched is assumed to be true, that fact, standing alone, does not make it inequitable for the company to pay interest. *See Rolf v. Blyth, Eastman Dillon & Co., supra,* 637 F.2d at 87.

rights to the full amount claimed by them. Considering the fact that these questions lurk in the background and that in spite of their existence WU has, constructively, agreed to accept responsibility for damages in full, it is equitable that the interest which they pay should be computed on a simple interest basis.

Plaintiffs' motion is granted as to actual damages and pre-judgment interest on a simple interest basis from September 15, 1980 at the rate of short-term risk-free obligations from time to time.

Submit judgment on notice.