498 F.Supp. 105 (1980)
YELLOW FORWARDING CO. d/b/a Yellow Freight International, Plaintiff,
v.
ATLANTIC CONTAINER LINE, Dart Containerline Company Limited, Hapag-Lloyd Aktiengesellschaft, Sea-Land Service, Inc., United States Lines, Inc., Defendants.
No. 79-1003-C(3).
United States District Court, E. D. Missouri, E. D.
September 30, 1980.
*106 Sanford M. Litvack, Donovan, Leisure, Newton & Irvine, New York City, for defendant United States Lines, Inc.
Edwin Longcope, Hill, Betts & Nash, New York City, for defendant Dart Containerline Co., Limited.
John C. Fricano, Skadden, Arps, Slate, Meagher & Flom, Washington, D. C., for defendant Sea-Land Service, Inc.
William Karas, Galland, Kharasch, Calkins & Short, Washington, D. C., for defendant Atlantic Container Line.
Jacob P. Billig, Billig, Sher & Jones, P. C., Washington, D. C., for defendant Hapag-Lloyd Aktiengesellschaft.
John H. Stroh, Thompson & Mitchell, St. Louis, Mo., for defendants.
Guilfoil, Symington, Petzall & Shoemake, Thomas J. Guilfoil, James J. Shoemake, St. Louis, Mo., for plaintiff; Lester M. Bridgeman, Bridgeman & Nerenberg, Washington, D. C., Philip B. Green, Overland Park, Kan., of counsel.

MEMORANDUM
FILIPPINE, District Judge.
This matter is before the Court on separate motions of two sets of the defendants to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. A summary of the allegations of the complaint, which was filed pursuant to 15 U.S.C. § 15, is as follows:
Plaintiff is a surface freight forwarder and a non-vessel operating common carrier (NVOCC). Plaintiff consolidates, for mid-western shippers, less-than-container loads into single containers for shipment to ocean ports and beyond. Plaintiff employs ocean carriers to carry container shipments across the Atlantic.
Defendants are ocean carriers who compete with plaintiff for consolidation business and who compensate plaintiff for consolidation services rendered by plaintiff to defendants. Defendants are, and have been for more than six years, members of the North Atlantic Shipping Conference. For at least the past six years, defendants have "made uniform" their payments to NVOCCs for the latters' consolidation services; these payments have "no reasonable relation to the cost or market value of the compensated service." The payment rules were filed with the Federal Maritime Commission (Commission) six years ago as part of defendants' ocean tariffs. For the past three years, defendants have attempted to eliminate these payments to plaintiff by repeatedly filing with the Commission proposed agreements to that effect. Such a proposed agreement is currently being considered in Docket No. 77-23, in which the defendants are supporting Agreement 10294 and the plaintiff is protesting the Agreement.
Specifically, defendants (and the International Longshoreman's Association [Union]) have injured plaintiff since 1973 through their agreement on the terms of plaintiff's compensation or denial thereof and their failure to inform the Commission that one purpose of the uniform compensation terms has been to transfer the mid-west consolidation business to the East Coast. One intended effect of the conspiracy is a secondary boycott of plaintiff, which employs no Union members. Plaintiff's consolidation income has been substantially reduced by this uniform payment scheme.
Plaintiff's prayer is for injunctive relief from the uniform payment scheme and for treble damages (including treble the expenses incurred by plaintiff in those proceedings before the Commission in which the defendants have attempted to eliminate the consolidation compensation).
*107 Plaintiff's complaint must be read to some extent to state inconsistent claims, as the plaintiff claims both that it has been damaged by the institution and maintenance of the uniform payment system and that it would be damaged by the elimination thereof. Inconsistent pleadings are, of course, permissible. F.R.Civ.P. 8(e)(2).
It must be noted at the outset that the Shipping Act, 1916, as amended, 46 U.S.C. §§ 801-842, contains a provision exempting from the Sherman and Clayton Acts any activity lawful under § 15 of the Shipping Act, 46 U.S.C. § 814. The immunity conferred by that section does not extend to the implementation of agreements which have not been approved by the Commission. See Carnation Co. v. Pacific Conference, 383 U.S. 213, 86 S.Ct. 781, 15 L.Ed.2d 709 (1966). Defendants' motions to dismiss are premised in large part on their claim that their alleged agreements respecting consolidation allowances have antitrust immunity under § 15.
Defendants have drawn the Court's attention to the decision of the Commission in Docket No. 76-35, Cancellation of Consolidation Allowance Rule, 18 S.R.R. 637 (1978). In that decision, plaintiff participated as an intervenor and all five of the instant defendants were respondents. The issues were whether the respondents had taken any unapproved actions with respect to consolidation allowances and, if not, whether such allowances were in the public interest.
The Commission decision in Docket No. 76-35 was essentially that although respondents' consolidation allowance rules did not constitute "routine ratemaking," "Respondents' agreements as approved by [the] Commission permit[ted] them the authority to initiate and maintain a system of payment of consolidation allowances." However, the Commission found that such authority would not extend to the cancellation or elimination of the allowances, and that any attempt at cancellation by respondents would require separate approval under § 15. Finally, the Commission determined that the implementation and maintenance of the consolidation allowances was in the public interest because it fostered the growth of the consolidation business.
Under 28 U.S.C. § 2342(3), the appropriate Court of Appeals had exclusive jurisdiction of any appeal which the plaintiff or any other party to Docket No. 76-35 might have wished to take. It is self-evident that the plaintiff did not appeal from the Commission's decision because the plaintiff's position in that action was that the maintenance of the consolidation allowances was within the approved authority of the defendants but that cancellation thereof was not. Thus, the instant case resembles Port of Boston Marine Terminal Ass'n. v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970), in which the Commission held that a revised tariff which had been filed by the plaintiff conference of maritime terminal operators was within the scope of the conference's approved agreement. One of the shippers from whom payment would be exacted under the revised tariff intervened in the District Court action in which the conference was attempting to collect the tariff. The District Court, after having stayed the action to await the Commission's decision, refused to review the merits of the Commission's decision and rendered judgment against the shippers. The Supreme Court upheld the District Court's decision not to review the merits of the Commission's decision, noting that under § 2342, the Court of Appeals had exclusive jurisdiction to determine the validity of final orders of the Commission. The Court observed that the intervening shipper "had every opportunity to participate before the Commission and then to seek timely review in the Court of Appeals. It chose not to do so. Certainly, from this posture, it cannot force collateral redetermination of the same issue in a different and inappropriate forum." 400 U.S. at 72, 91 S.Ct. at 210.
Plaintiff attempts to distinguish Port of Boston on the ground that
Plaintiff is not seeking here a collateral review of any decision made by the [Commission]. As we have shown, our Complaint assumes the correctness of the *108 [Commission's] decision in Docket No. 76-35. All that the [Commission] held or could hold in that proceeding was that the Shipping Act had authorized it to approve collective action by ocean carriers in including consolidation allowances in their rate filings. It had before it in that proceeding no claim by any party that the approved agreements had any illegal purpose whatsoever.
Plaintiff's Memorandum in Opposition to Motions to Dismiss (Pl.'s Memorandum) at 18. At another point, plaintiff argues that "the illegal purpose, asserted only by our antitrust Complaint, ... deprives the [Commission] of jurisdiction to approve the consolidation allowance conspiracy challenged in this suit." Pl.'s Memorandum at 15.
The Court finds both arguments unpersuasive. The statement that defendants' allegedly illegal (anti-competitive) purpose deprived the Commission of jurisdiction is simply inaccurate. The Supreme Court has observed:
Because § 15 provides that an approved agreement will not be subject to the antitrust laws, it is apparent that Congress assigned to the Commission, not to the courts, the task of initially determining which anticompetitive restraints are to be approved and which are to be disapproved under the general statutory guidelines. It is equally apparent that as a substantive matter, Congress anticipated that various anticompetitive restraints, forbidden by the antitrust laws in other contexts, would be acceptable in the shipping industry.
That the Commission is the public arbiter of competition in the shipping industry is reflected in prior holdings that in reaching its decision under § 15 the Commission must "consider the antitrust implications of an agreement before approving it," FMC v. Seatrain Lines, Inc., 411 U.S. 726, 739 [93 S.Ct. 1773, 1782, 36 L.Ed.2d 620] (1973), and should approve an anticompetitive agreement only if it is "`required by a serious transportation need, necessary to secure important public benefits or in furtherance of a valid regulatory purpose of the Shipping Act.'" FMC v. Svenska Amerika Linien, 390 U.S. 238, 243 [88 S.Ct. 1005, 1009, 19 L.Ed.2d 1071] (1968). The Commission, nevertheless, may approve agreements "even though they are violative of the antitrust laws ...." Seatrain, supra, [411 U.S.] at 728 [93 S.Ct. at 1776.]
FMC v. Pacific Maritime Ass'n., 435 U.S. 40, 53-54, 98 S.Ct. 927, 935, 55 L.Ed.2d 96 (1978).
The Court also disagrees with plaintiff's first argument because the Commission's decision in Docket No. 76-35, in holding that the consolidation allowances at issue were within the scope of defendants' approved agreements and were in the public interest, necessarily conferred antitrust immunity on the defendants pursuant to § 15. Although the consolidation allowances themselves were not filed pursuant to § 15, the Commission in effect held that they were lawful under that section because they were instituted pursuant to an approved agreement and therefore did not require the Commission's prior, separate approval. That decision, which involved, in the Commission's phrase, "a consideration of external circumstances" and of affidavits of fact, now has collateral estoppel effect, and its correctness cannot be challenged by plaintiff in this action. United States v. Utah Construction Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966).
The fact that the Commission has held that the allowances at issue did not require separate filing under § 15 distinguishes this case from Carnation Co. v. Pacific Conference, 383 U.S. 213, 86 S.Ct. 781, 15 L.Ed.2d 709 (1966). In that case the Commission held that the defendants in the antitrust action had implemented an unapproved agreement which was not covered by an earlier, approved agreement, and the Supreme Court held that the dismissal of plaintiff's treble-damage action was error. The Supreme Court observed that "[a]lthough the Commission can approve prospective operations under agreements which have been implemented without approval, ... the Commission has no power to *109 validate pre-approval implementation of such agreements." 383 U.S. at 222, 86 S.Ct. at 787. The Supreme Court remanded to the District Court with directions to stay the action pending the final outcome of the appeal of the Commission's decision. That action provides further support for this Court's view that a retroactive decision by the Commission, or a decision on appeal therefrom, that a certain course of concerted action had not required independent filing under § 15, has conclusive weight in an antitrust action based on that course of action.
Plaintiff argues that the principles of Utah Construction Co., supra, do not support the proposition that the Commission's decision must be accorded collateral estoppel effect because that case involved only the effect to be given to administrative decisions of "disputed issues of fact." Plaintiff further claims that "[n]o issues were raised as to the Defendants' authority to take concerted action with respect to consolidation allowances in Docket 76-35 .... All parties agree and always have agreed that the Shipping Act grants such power to the Defendants." Plaintiff's Memorandum at 17.
The Court finds the latter argument to be slightly disingenuous. Of course there was no issue in Docket No. 76-35 as to defendants' theoretical ability to take concerted action, once approved by the Commission. There was an issue, however, as to whether defendants' actions with respect to consolidation allowances had been approved. Plaintiff implies that the Commission's decision on this issue was not a factual determination. The Supreme Court indicated otherwise in Carnation Co., supra. There the Court explained its earlier holding that the Commission had primary jurisdiction to determine whether certain conduct alleged to be unlawful in an antitrust action in fact constituted the implementation of unapproved agreements:
"This Court decided that the danger of such a conflict could best be avoided by holding that one tribunal or the other has the exclusive right to make the initial factual determination. Since the Commission has specialized knowledge of the industry, the Court concluded that such primary jurisdiction should be vested in the Commission and accordingly instructed the District Court to refrain from acting until the Commission had ascertained and interpreted the circumstances underlying the legal issues."
383 U.S. at 220-21, 86 S.Ct. at 786. The Court's characterization of the process as a factual determination is in fact illustrated by the Commission's approach in Docket No. 76-35.
There can be no doubt that plaintiff had a full and fair opportunity to litigate the issues in Docket No. 76-35, for in fact the plaintiff's position prevailed. Accordingly, insofar as plaintiff seeks damages and injunctive relief from defendants' institution and maintenance of the uniform consolidation allowances at issue, defendants must have judgment because plaintiff is estopped from attacking the allowances' legality, and the defendants' concomitant antitrust immunity, under § 15.
Insofar as plaintiff's complaint is directed to the current and past proceedings before the Commission in which the defendants are attempting to eliminate the consolidation allowances, the Court finds that the complaint falls far short of the level required to invoke the "sham" exception to the Noerr-Pennington doctrine, as developed in California Transport v. Trucking Unlimited, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). The Eighth Circuit has analyzed the Noerr-Pennington doctrine as follows:
[Eastern R.R. Presidents Conference v.] Noerr [Motor Freight, Inc.,] 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464] and [United Mine Workers of America v.] Pennington [381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626] read together, have been correctly summarized ... as holding that "joint efforts to influence government action are outside the scope of the Sherman Act, even if the combination is formed for the sole purpose of eliminating competitors."
. . . . .

*110 [In California Transport v. Trucking Unlimited, supra] the essential element of the sham exception, whether employed in an adjudicative or non-adjudicative setting [was disclosed], namely, an absence of a genuine effort to influence government but, rather, an intent to injure a competitor directly.
. . . . .
It matters not that the sole purpose alleged to underlie the attempt to influence governmental action was to hamper a competitor's business activities.
Mark Aero, Inc. v. Trans World Airlines, Inc., 580 F.2d 288, 294-96 (8th Cir. 1978) (footnotes omitted). In Mark Aero, the critical allegations were that the defendants had "prevented plaintiff from enjoying free and meaningful access" to certain adjudicatory bodies by, among other things, engaging in a publicity campaign and resorting to economic coercion. Despite the plaintiff's unmistakable attempt to invoke California Transport's definition of the sham exception, the Eighth Circuit held that the complaint should have been dismissed.
In the instant case, plaintiff's allegation that the defendants have "repeatedly fil[ed]" proposed uniform rules which would eliminate the consolidation allowances, does not even suggest that the defendants' true intent is not to cause the Commission to approve those proposals. There is no allegation that the plaintiff's access to any of those proceedings has been barred or impeded in any way. In fact, plaintiff alleges that it is currently a party to Docket No. 77-23. Accordingly, to the extent that plaintiff's complaint is directed towards the defendants' past and current efforts to cause the Commission to approve the elimination of the allowances, it must be dismissed.
Finally, the Court observes that plaintiff's arguments that the Commission should not be allowed to usurp the functions of the I.C.C. and the N.L.R.B. is, ultimately, an argument that § 15 should be repealed. Since the Commission's authority under § 15 has not been extinguished, however, this Court must defer to that authority. See FMC v. Pacific Maritime Ass'n, supra.