668 F.2d 350
 109 L.R.R.M. (BNA) 2356, 92 Lab.Cas. P 13,165,
1981-2 Trade Cases 64,419
 YELLOW FORWARDING CO. d/b/a Yellow Freight International, Appellant,
v.
ATLANTIC CONTAINER LINE; Dart Containerline Company Limited;
Hapag-Lloyd Aktiengesellschaft; Sea-Land Service,
Inc.; and United States Lines, Inc., Appellees.
 No. 80-1945.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 17, 1981.
Decided Dec. 21, 1981.
 
 Thomas J. Guilfoil, Jim J. Shoemake, John W. O'Neil, Jr., Guilfoil, Symington, Petzall & Shoemake, St. Louis, Mo., for appellant; Lester M. Bridgeman, argued, Robert L. Wright, Washington, D. C., Philip B. Green, Shawnee Mission, Kan., of counsel.
 John H. Stroh, Thompson & Mitchell, St. Louis, Mo., Rodney O. Thorson, John C. Fricano, Skadden, Arps, Slate, Meagher & Flom, Washington, D. C., for Sea-Land Service, Inc.; Robert S. Zuckerman, Oliver J. Trytell, of counsel.
 John H. Stroh, Thompson & Mitchell, St. Louis, Mo., for appellees.
 Jacob P. Billig, argued, John R. Attanasio, Billig, Sher & Jones, P. C., Washington, D. C., for appellee Hapag-Lloyd Aktiengesellschaft.
 Before STEPHENSON and McMILLIAN, Circuit Judges, and HANSON,* Senior District Judge.
 McMILLIAN, Circuit Judge.
 
 
 1
 Yellow Forwarding Company appeals from a summary judgment entered in the District Court for the Eastern District of Missouri[1] pursuant to Fed.R.Civ.P. 12(b), dismissing its complaint seeking monetary and injunctive relief against appellee ocean carriers on the basis of alleged violations of the Sherman Act, 15 U.S.C. § 1, and the Labor Management Relations Act, 29 U.S.C. §§ 158(b) and (e).
 
 
 2
 For reversal appellant argues that the district court erred (1) in finding that the Federal Maritime Commission's (Commission) approval of appellees' conference agreement required the dismissal of its complaint, and (2) in finding that the Commission has the authority to immunize the conspiracy and secondary boycott alleged in appellant's complaint. For the reasons discussed below, we affirm.
 
 
 3
 Appellant is a surface freight forwarder and a non-vessel operating common carrier (NVO). It consolidates, for midwestern shippers, less-than-container loads into single containers for shipment to ocean ports and beyond. Appellant employs the services of ocean carriers to carry container shipments across the Atlantic.[2]
 
 
 4
 Appellees operate ocean vessels for trans-Atlantic shipments of containerized freight and employ members of the International Longshoremen's Association (Union) to load their ships. Appellees are subject to the jurisdiction of the Commission pursuant to the Shipping Act, 46 U.S.C. § 801 et seq. Under § 15 of the Shipping Act,[3] 46 U.S.C. § 814, ocean carriers may organize ratemaking conferences through which the conference members may jointly establish the rates to be observed by the member carriers in the particular trade covered by the agreement. Conference agreements must be filed with and approved by the Commission.[4] Agreements approved by the Commission and activities conducted pursuant to approved agreements are exempt from the antitrust laws.[5]
 
 
 5
 Appellees are members of the North Atlantic Shipping Conference. Several years ago appellees agreed to establish and maintain uniform consolidation allowances.[6] The conference agreements were filed with the Commission as part of appellees' ocean tariffs.
 
 
 6
 Subsequently, appellees attempted to eliminate the allowances by filing tariff revisions to that effect with the Commission. In December, 1975, in response to complaints from NVOs, freight forwarders, and consolidators, the Commission issued an Order to Show Cause directing appellees to show:
 
 
 7
 (W)hy the Commission should not find that any concerted action of Respondents (appellees) with regard to consolidation allowances are actions which implement unfiled, unapproved agreements in violation of section 15.
 
 
 8
 ....
 
 
 9
 (W)hy, even if the concerted actions are pursuant to agreements approved by the Commission under section 15 of the Shipping Act, 1916, the Commission should not find such agreements contrary to the public interest which should be disapproved or modified.
 
 
 10
 Docket No. 76-35, Cancellation of Consolidation Allowance Rule (1978) (Appendix A at 3-4).[7] In that proceeding appellant and other NVOs participated as intervenors and all five of the instant appellees were respondents.
 
 
 11
 The Commission found that, although the consolidation allowances did not constitute routine ratemaking, appellees' "agreement as approved by this Commission permits them the authority to initiate and maintain a system of consolidation allowances." Appendix A at 17. However, the Commission found that such authority did not extend to cancellation or elimination of the allowances and that any attempt at cancellation would require separate approval under § 15.[8] Id. at 18. The Commission further determined that the implementation and maintenance of the consolidation allowance system was in the public interest because it fostered the growth of the consolidation business. Id. at 19-20. No party to Docket No. 76-35 sought judicial review of the Commission's decision, although such review was available pursuant to 28 U.S.C. § 2342.
 
 
 12
 Subsequently, appellant filed the present action in district court. Specifically, appellant alleged that appellees had conspired with each other and with the Union to violate § 1 of the Sherman Act by depriving appellant of its right to deal competitively with appellees. Appellant alleged that appellees carried out the conspiracy by both establishing and attempting to eliminate the consolidation allowance system without informing the Commission that the intended purpose of the uniform allowance rule was to transfer the consolidation business from the Midwest to the East Coast and that the effect of the rule was a secondary boycott of appellant which employed no members of the Union, in violation of the Labor Management Relations Act, 29 U.S.C. § 158(b), (e).[9]
 
 
 13
 Appellees filed motions to dismiss the complaint for failure to state a claim upon which relief could be granted. The district court granted the motions holding that the Commission's decision in Docket No. 76-35 conferred antitrust immunity on the consolidation allowances under § 15 of the Shipping Act because the Commission had found the allowances to be within the scope of appellees' approved conference agreements and in the public interest. Yellow Forwarding Co. v. Atlantic Container Line, 498 F.Supp. 105, at 108 (E.D.Mo.1980). The district court also ruled that appellant, as a party to Docket No. 76-35, could not challenge that immunity by collaterally attacking the Commission decision in district court. Id., citing Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970). The district court further held that the complaint failed to state a cause of action insofar as it alleged an agreement with the Union to obtain Commission approval to eliminate the allowance because that conduct was protected under the Noerr-Pennington doctrine. At 109.
 
 
 14
 On appeal appellant argues that the Commission's decision in Docket No. 76-35 did not immunize the conspiracy and secondary boycott alleged in its complaint because the nature, purpose and intended effect of the conspiracy were not revealed to the Commission. Therefore, appellant argues, the district court erred in relying on Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic, supra, 400 U.S. 62, 91 S.Ct. 203, 27 L.Ed.2d 203. Appellant does not challenge the Commission's approval of the fixing of consolidation allowances pursuant to a conference agreement. Alternatively, appellant argues that the Commission lacks jurisdiction under Allen Bradley Co. v. Electrical Workers Union, 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939 (1945), to immunize a conspiracy among appellees and the Union to injure the business of midwestern consolidators by a secondary boycott.
 
 
 15
 In response appellees argue that the uniform allowances are immunized from the antitrust laws by reason of the Commission's approval and that appellant is estopped from collaterally attacking the issues decided by the Commission in Docket No. 76-35.
 
 
 16
 We find appellant's arguments unpersuasive and affirm the district court's dismissal of appellant's complaint for lack of subject matter jurisdiction. Appellees' conference agreements are exempt from the federal antitrust laws by virtue of Commission approval pursuant to § 15 of the Shipping Act, 46 U.S.C. § 814, and appellant may not seek judicial review of the final orders of the Commission by filing an antitrust action in the district court.
 
 
 17
 First, appellant argues that the only issue litigated before the Commission in Docket No. 76-35 was whether appellees' "elimination (of the allowances) had been impliedly approved by the (Commission's) prior approval of their earlier ratemaking agreement."[10] However, the issues set forth for investigation in that proceeding included whether "any concerted action of Respondents (appellees) with regard to consolidation allowances are actions which implement ... unapproved agreements ... in violation of section 15." Appendix A at 3. Therefore, the scope of the issue decided by the Commission included the legality of the establishment and maintenance, as well as the attempted elimination, of the uniform allowances.
 
 
 18
 Moreover, the Commission in Docket No. 76-35 specifically found that the establishment and maintenance of the allowances was in the "public interest." Appendix A at 19. In making such a finding, the Commission must consider the antitrust implications of the agreements submitted for approval. E.g., FMC v. Pacific Maritime Ass'n, 435 U.S. 40, 53, 98 S.Ct. 927, 935, 55 L.Ed.2d 96 (1978); FMC v. Seatrain Lines, Inc., 411 U.S. 726, 739, 93 S.Ct. 1773, 1781, 36 L.Ed.2d 620 (1973); FMC v. Aktiebolaget Svenska Amerika Linien, 390 U.S. 238, 242-44 (1968). Further, when allegations are raised that a conference action results in a secondary boycott, the Commission is required to consider such allegations in determining whether the conduct is authorized under § 15. Interpool, Ltd. v. FMC, 663 F.2d 142 (D.C.Cir.1980).
 
 
 19
 Therefore, appellant's allegations as to the alleged purpose and intended effect of the agreement among the appellees and the Union as to the terms on which appellees would compensate it were clearly within the scope of the Commission's inquiry in Docket No. 76-35.
 
 
 20
 In addition we note that appellant seeks injunctive relief restraining appellees from enforcing the uniform allowances and monetary relief for damages incurred by reason of the establishment and maintenance of the uniform allowances. In order to grant such relief the district court would have had to find that the uniform allowances had not been established pursuant to an approved conference agreement and thus were not immune from the antitrust laws. Carnation Co. v. Pacific Westbound Conference, 383 U.S. 213, 216, 86 S.Ct. 781, 783, 15 L.Ed.2d 709 (1966). So considered, it is clear that appellant's complaint is an improper attempt to seek collateral review of the merits of the Commission's decision in the district court.
 
 
 21
 Appellant could have raised its arguments before the Commission[11] and sought timely review in the court of appeals. It chose not to do so. It cannot now force collateral redetermination of the legality of the uniform allowances in a different and inappropriate forum. Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic, supra, 400 U.S. at 72, 91 S.Ct. at 210 citing United States v. Western Pacific R. R., 352 U.S. 59, 69, 77 S.Ct. 161, 167, 1 L.Ed.2d 126 (1956).
 
 
 22
 Appellant next argues that the Commission lacks jurisdiction to immunize the alleged conspiracy from the antitrust laws. We disagree. Section 15 of the Shipping Act establishes the requirements for obtaining Commission approval of conference agreements. The section requires submission of all agreements that have the effect of "fixing or regulating transportation rates" or "controlling, regulating, preventing, or destroying competition."[12] After notice and hearing the Commission may cancel, disapprove or modify any agreement that is "unjustly discriminatory or unfair," would "operate to the detriment of the commerce of the United States," is contrary to the public interest, or is in violation of the Shipping Act.[13] Agreements approved by the Commission are exempt from the antitrust laws.[14] Therefore, the Shipping Act clearly contemplates that anticompetitive agreements will be executed and, if approved by the Commission, are permissible in the shipping industry. See FMC v. Pacific Maritime Ass'n, supra, 435 U.S. 40, 98 S.Ct. 927, 55 L.Ed.2d 96.
 
 
 23
 In addition, the Supreme Court has held that district courts do not have jurisdiction in antitrust suits to determine the substantive legality or propriety of conference agreements or rates; such issues are within the exclusive competence and primary jurisdiction of the Commission. Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952); United States Navigation Co. v. Cunard S.S. Co., 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408 (1932). Further, the courts of appeals have exclusive jurisdiction to "determine the validity of ... such final orders of the Federal Maritime Commission." Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic, supra, 400 U.S. at 69, 91 S.Ct. at 208, citing 28 U.S.C. § 2342; Consolo v. FMC, 383 U.S. 607, 613, 86 S.Ct. 1018, 1023, 16 L.Ed.2d 131 (1966); Far East Conference v. United States, supra, 342 U.S. at 577, 72 S.Ct. at 495.
 
 
 24
 Appellant's reliance on Allen Bradley Co. v. Electrical Workers Union, supra, 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939 is misplaced. That case did not involve a regulatory statute which granted immunity from the antitrust laws for the conduct involved. Unlike an agreement among ocean carriers for which antitrust immunity may be conferred by Commission approval, no analogous statutory immunity is available to electrical equipment manufacturers such as those involved in Allen Bradley. See FMC v. Pacific Maritime Ass'n, supra, 435 U.S. at 61, 98 S.Ct. at 939.
 
 
 25
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 *
 The Honorable William C. Hanson, United States Senior District Judge for the Northern and Southern Districts of Iowa, sitting by designation
 
 
 [1]
 The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri
 
 
 [2]
 NVOs earn revenues by obtaining the benefit of the lower full-container load rate of the ocean carriers while charging the underlying shipper according to a tariff structure intended to result in a profit to the NVO
 
 
 [3]
 Section 15 provides in relevant part:
 Every common carrier by water, or other person subject to this chapter, shall file immediately with the Commission a true copy, or, if oral, a true and complete memorandum, of every agreement with another such carrier or other person subject to this chapter, or modification or cancellation thereof, to which it may be a party or conform in whole or in part, fixing or regulating transportation rates or fares; giving or receiving special rates, accommodations, or other special privileges or advantages; controlling, regulating, preventing, or destroying competition; pooling or apportioning earnings, losses, or traffic; allotting ports or restricting or otherwise regulating the number and character of sailings between ports; limiting or regulating in any way the volume or character of freight or passenger traffic to be carried; or in any manner providing for an exclusive, preferential, or cooperative working arrangement. The term "agreement" in this section includes understandings, conferences, and other arrangements....
 The Commission shall by order, after notice and hearing, disapprove, cancel or modify any agreement, or any modification or cancellation thereof, whether or not previously approved by it, that it finds to be unjustly discriminatory or unfair as between carriers, shippers, exporters, importers, or ports, or between exporters from the United States and their foreign competitors, or to operate to the detriment of the commerce of the United States, or to be contrary to the public interest, or to be in violation of this chapter, and shall approve all other agreements, modifications, or cancellations.
 
 
 [4]
 46 U.S.C. § 814; see note 3 supra. The only exception to this requirement is for types or classes of agreements which the Commission, after appropriate administrative proceedings, determines are of such a de minimus or routine character as not to require a formal filing. See Volkswagenwerk Aktiengesellschaft v. FMC, 390 U.S. 261, 276, 88 S.Ct. 929, 937, 19 L.Ed.2d 1090 (1968)
 
 
 [5]
 Section 15 provides in relevant part:
 Every agreement, modification, or cancellation lawful under this section or permitted under section 813a of this title, shall be exempted from the provisions of sections 1 to 11 and 15 of Title 15, and amendments and Acts supplementary thereto.
 
 
 [6]
 It is not clear from the record exactly how long the uniform rules have been on file with the Commission. Appellants admit that they had been filed for at least six years at the time of filing its complaint in district court. Yellow Forwarding v. Atlantic Container, 498 F.Supp. 105 (E.D.Mo.1980) (Complaint at 3)
 The allowances consist of discounts from an ocean carrier's normal full containerload rates. They are paid to NVOs who tender for shipment fully-loaded containers holding a specified mixture of cargo, including cargo owned by a prescribed minimum number of different underlying shippers.
 
 
 [7]
 Copies of the Commission dockets were attached to the designated record as appendixes. The dockets will be cited throughout this opinion by a reference to the Commission docket number and appendix page number
 
 
 [8]
 While Docket No. 76-35 was pending several ocean carriers, including four of the instant appellees, filed Conference Agreement No. 10294, under which they refused to pay consolidation allowances to off-pier NVOs while continuing to pay allowances to on-pier NVOs for similar work. The Commission instituted Docket No. 77-23, Appendix E, to determine the lawfulness of the agreement under § 15. The administrative law judge found that the proposed agreement violated the Shipping Act and the carriers subsequently cancelled the agreement and withdrew their request for its approval. Docket No. 77-23, Appendix E at 97. That decision was filed after appellant filed the instant complaint in district court
 
 
 [9]
 Appellant has not raised the issue of appellees' efforts to eliminate the uniform allowances. See note 8 supra
 
 
 [10]
 Appellant's Brief at 15-16. Appellant raises an analogous argument when it states that application of the collateral estoppel doctrine is inappropriate as evidenced by the Commission's willingness to relitigate the issues decided in Docket No. 76-35 in the subsequent Docket No. 77-23. However, appellant's argument is misleading. Docket No. 76-35 decided that the uniform allowances were lawful because they were instituted pursuant to an approved agreement and therefore did not require a separate filing under § 15. However, Docket No. 76-35 also decided that attempts to reduce or eliminate the uniform allowances would require a separate filing and approval under § 15. Docket No. 77-23 was then instituted by appellees in an attempt to obtain Commission approval for the elimination of the allowances. The legality of the establishment and maintenance of the allowances was not relitigated in Docket No. 77-23. See note 8 supra
 
 
 [11]
 Appellant's proffered argument to justify its failure to raise its arguments before the Commission is that it would have been inconsistent with its position in Docket No. 76-35 that the uniform allowances promoted competition in the consolidation trade. Appendix A at 10. However, we note that other intervenor-consolidators participating in Docket No. 76-35 argued that both the establishment and the attempts to eliminate the allowances violated § 15. Id. at 10-11
 
 
 [12]
 46 U.S.C. § 814; see note 3 supra
 
 
 [13]
 Id
 
 
 [14]
 Id